FOR PUBLICATION

ATTORNEYS FOR APPELLANT
: 
ATTORNEYS FOR APPELLEE
:

JEFFREY A. MODISETT
 
KIMBERLY H. DANFORTH

Attorney General of Indiana Mitchell Hurst Jacobs & Dick

Indianapolis, Indiana

JON LARAMORE
 

Deputy Attorney General 
ROBERT W. FECHTMAN

Indianapolis, Indiana Severns Associates

Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE
:

THOMAS C. DOEHRMAN

Conour Doehrman

Indianapolis, Indiana

GEOFFREY G. GIORGI

Crown Point, Indiana

IN THE

COURT OF APPEALS OF INDIANA

THE MATTER OF THE GUARDIANSHIP OF )

)

) No.  33A01-9709-CV-289

STEPHEN E. WADE. )

)

APPEAL FROM THE HENRY CIRCUIT COURT

The Honorable John L. Kellam, Judge

Cause No. 33C01-9404-GU-013

April 27, 1999

OPINION - FOR PUBLICATION

RUCKER, Judge

Stephen Wade was injured in a personal injury accident that rendered him incapacitated.  Because his medical bills were paid by Medicaid, the Indiana Family and Social Services Administration (FSSA) filed a notice to hold a lien against any funds Wade might receive as a result of the accident.  After Wade received a settlement his guardian filed a motion to reduce the lien pursuant to Indiana's lien reduction statute.  The trial court granted the motion.  FSSA now appeals contending the trial court erred in so doing because federal Medicaid law preempts Indiana's lien reduction statute.  We disagree and therefore affirm.

The record shows that on or about April 2, 1994, Stephen Wade, a pedestrian, was struck by an automobile driven by Leah Kopp.  As a result Wade suffered severe and permanent injuries that rendered him incapacitated and required the appointment of a guardian.  By April 1, 1996, Medicaid had paid over $200,000.00 toward Wade's medical expenses.  Accordingly on April 17, 1996, FSSA, the state agency responsible for administering the Medicaid program, filed a notice of its intent to hold a lien in the amount of the monies paid by Medicaid against any funds Wade might receive as a result of contract, judgment, or compromise.  Sometime thereafter Wade received a $100,000.00 policy limits settlement from Kopp's liability insurer.  On October 24, 1996, asserting that the reasonable value of Wade's claim exceeded 3 million dollars, Wade's guardian filed a petition to reduce the amount of FSSA's lien to 2.25%.  That figure represented a reduction to 3% of the total lien and a further reduction of 25% to reflect FSSA's share of attorney fees and pro rata expenses.  After entertaining arguments of counsel and taking the matter under advisement the trial court granted the petition on March 21, 1997.  This appealed followed. 

FSSA contends the trial court erred in granting Wade's petition to reduce the lien. According to FSSA, provisions of the Federal Social Security Act preempt state law and thus preclude reduction of Medicaid liens.  Indiana's lien reduction statute provides in pertinent part:

If a subrogation claim or other lien or claim that arose out of the payment of medical expenses or other benefits exists in respect to a claim for personal injuries or death and the claimant's recovery is diminished:

(1) by comparative fault; or

(2) by reason of the uncollectibility of the full value of the claim for personal injuries or death resulting from limited liability insurance or from any other cause;

the lien or claim shall be diminished in the same proportions as the claimant's recovery is diminished.  The party holding the lien or claim shall bear a pro rata share of the claimant's attorney's fees and litigation expenses.

Ind. Code § 
34
-51-2-19. 

The preemption doctrine is based on the supremacy clause of the United States Constitution which provides in relevant part that the law of the United States "shall be the supreme law of the land . . . anything in the constitution or laws of any state to the contrary notwithstanding."  U.S. Const. art. VI, cl. 2.  State or local law which conflicts with federal law is "without effect."  
Cipollone v. Liggett Group, Inc.
, 505 U.S. 504, 112 S. Ct. 2608, 2617, 120 L. Ed. 2d 407, 422 (1992).  Three variations of federal preemption doctrine exist:  express preemption, which occurs when a statute expressly defines the scope of its preemptive effect, 
Morales v. Trans World Airlines, Inc.
, 504 U.S. 374, 112 S. Ct. 2031, 2036, 119 L. Ed. 2d 157 (1992); 
Metropolitan Life Ins. Co. v. Christ
, 979 F.2d 575, 578 (7th Cir. 1992), field preemption, which occurs when a pervasive scheme of federal regulation makes it reasonable to infer that Congress intended exclusive federal regulation of the area, 
Gade v. National Solid Wastes Management Ass'n
, 505 U.S. 88, 112 S. Ct. 2374, 2383, 120 L. Ed. 2d 73 (1992); 
Seaboard Sur. Co. v. Ind. St. Dist. Council
, 645 N.E.2d 1121, 1123 (Ind. Ct. App. 1995), 
trans. denied
, and conflict preemption, which occurs either where it is impossible to comply with both federal and state or local law, 
Gade
, 112 S. Ct. at 2383, or where state law stands as an obstacle to the accomplishment and execution of federal  purposes and objectives.  
Hillsborough County v. Automated Med. Lab., Inc.
, 471 U.S. 707, 713, 105 S. Ct. 2371, 2375, 85 L. Ed. 2d 714 (1985); 
Wilson v. Pleasant
, 660 N.E.2d 327, 337 (Ind. 1995).

In this case FSSA concedes that neither express preemption nor field preemption is at issue.  This is so because as to the former
 nothing in the federal regulatory scheme expressly defines the scope of its preemptive effect.  As to the latter, it is clear that Congress did not intend exclusive federal regulation of the area because 
the Medicaid program is a cooperative endeavor between the states and the federal government operating through a combined scheme of state and federal statutory and regulatory authority.  
See
 42 U.S.C § 1396a: Ind. Code § 12-15-1-1; 
Family & Social Servs. Admin. v. Calvert
, 672 N.E.2d 488, 493 (Ind. Ct. App. 1996), 
trans. denied
.
  Hence, the type of preemption raised in this case is conflict preemption.  According to FSSA Indiana's lien reduction statute is preempted by federal law because it "stands as an obstacle to the accomplishment of the full purposes and objectives of Congress."  Brief of Appellant at 8 (
quoting
 
Wilson v. Pleasant
, 660 N.E.2d 327, 337 (Ind. 1995)).  More specifically FSSA maintains that Congress has imposed a reimbursement requirement on all states participating in the Medicaid program. According to FSSA federal law mandates participating states to seek full recovery of medical expenditures from third parties who are responsible for a recipient's injuries.

The Medicaid program came into existence in 1965 when Congress added Title XIX to the Social Security Act.  
Bowen v. Massachusetts
, 487 U.S. 879, 881, 108 S. Ct. 2722, 2726, 101 L. Ed. 2d 749 (1988).  The program was created "[f]or the purpose of enabling each State, as far as practicable under the conditions in such State to furnish (1) medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services . . . ."  42 U.S.C. § 1396.  Although participation in the Medicaid program is optional, once a state voluntarily chooses to participate, the state must comply with the requirements of Title XIX and applicable regulations.  
Harris v. McRae
, 448 U.S. 297, 301, 100 S. Ct. 2671, 2680, 65 L. Ed. 2d 784 (1980).  Indiana has chosen to participate in the Medicaid program.

The Medicaid statute requires states to retain that part of any amount collected on a Medicaid lien as is necessary to reimburse the federal government for medical assistance payments made on behalf of a state's Medicaid recipient.  42 U.S.C. § 1396k(a)(1)(A)
.  
The  remainder of such amounts collected are paid to the recipient.  
Id.
  
The statute also requires states to "take all reasonable measures" to ascertain the legal liability of responsible third parties.  
42 U.S.C. § 1396(a)(25)(A);
 and where liability is found to exist the state must seek reimbursement based on "the amount of reimbursement the State can reasonably expect to recover . . . ."  42 U.S.C. § 1396(a)(25)(B).  To complement the federal Medicaid statute, our legislature has enacted Ind. Code § 12-15-8-1 
et seq.
, commonly referred to as the Medicaid lien statute.  Thereunder where FSSA pays medical expenses on behalf of a person who has been injured by a third party, and the injured party asserts a claim for damages, then FSSA is entitled to a "lien against the other person, to the extent of the amount paid by [FSSA] on any recovery under the claim, whether by judgment, compromise, or settlement." 
Id.
 

Citing 
Indiana Dept. of Public Welfare v. McIntyre
, 471 N.E.2d 6 (Ind. Ct. App. 1984) and 
Indiana Dept. of Public Welfare v. Larson
, 486 N.E.2d 546 (Ind. Ct. App. 1985), 
trans. denied
, 
FSSA insists that Indiana's Medicaid lien statute entitles it to full recovery of its liens.
(footnote: 1)  However, unlike the case before us, neither of the foregoing cases involves Ind. Code § 34-51-2-19 the lien reduction statute.  More importantly however, the question here is whether as FSSA asserts, the federal Medicaid statute mandates that states seek "full recovery" of medical expenditures from third parties who are responsible for a recipient's injuries.  Although the Medicaid lien statute provides a vehicle for FSSA to comply with federal law, we read the Medicaid statute not as mandating full recovery, but as obtaining so much of a reimbursement as the State can "reasonably expect to recover."  42 U.S.C. § 1396(a)(25)(B).  In our view the State's reasonable expectation is subject to 
the lien reduction statute.  Stated differently FSSA is entitled only to that portion of its lien that is not otherwise reduced by the application of Ind. Code § 34-51-2-19.

In further support of its position that states may not reduce the amounts of recovery on Medicaid liens, FSSA directs our attention to a January 1995 decision rendered by the Appeals Board of the Federal Department of Heath and Human Services.  In that case the federal Health Care Financing Administration (HCFA) had denied to the State of California over 7.5 million dollars in funds claimed under the Medicaid Statute.  Apparently California's statutory scheme allowed the State various options in collecting from liable third parties Medicaid payments made on behalf of injured recipients.  The case arose because California chose an option in a number of instances that did not result in the full recovery of benefits.  When an audit revealed that California was not obtaining full recovery, HCFA disallowed the amount of funds which it determined California should have collected from liable third parties.  HCFA took the position that the Medicaid Statute required states to fully reimburse the agency for the federal share of medical assistance expenditures resulting from the acts of a liable third party before allowing a recipient to receive money from a settlement or award.  On appeal the Board affirmed HCFA's decision.

We first observe that the Appeals Board's decision is not binding authority on this court.  Like decisions of this state's administrative agencies the Board's decision is subject to judicial review.  
See
 
Seneca Oil Co. v. Dep't of Energy
, 712 F.2d 1384, 1396 (1983) (stating that interpretive ruling by Department of Energy was not binding on courts but entitled to deference in absence of exceptional circumstances).  Until a judicial opinion is issued resolving the matters raised before an administrative agency, the decision affects only the parties immediately before that agency.  
See
, 
e.g.
, 
Board of Reg. For Land Surveyors v. Bender
, 626 N.E.2d 491, 497 (Ind. Ct. App. 1993) (commenting on the absence of judicial review the court noted "if the Board's decision were erroneous, future boards would not then be forever bound to make the same erroneous decision."); 
National Kidney Patients Assoc. v. Sullivan
, 958 F.2d 1127, 1130 (D.C. Cir. 1992) (finding that the ruling by administrative agency in Medicare case is binding only on parties to the hearing).  In any event the Appeals Board did not determine that California's statutory scheme 
was preempted by the Medicaid statute.  Rather the Board merely determined that HCFA had reasonably interpreted the  statute.  
Indeed the Board specifically noted "a state is free to allow recipients to retain the state's share of [Medicaid funds] if they believe that is an equitable result."  
Board Decision
 No. 1504 at 14.  However, even assuming the Board's decision in that case can be read as a determination that California's statutory scheme is preempted by the Medicaid statute, there has been no such determination by HCFA or any other federal agency concerning Indiana's lien reduction statute.  In sum we do not read the lien reduction statute as standing as an obstacle to the accomplishment and execution of the purposes and objectives of the Medicaid statute.  Accordingly the trial court did not err in granting Ward's petition to reduce FSSA's Medicaid lien.

Judgment affirmed.

DARDEN, J., and SULLIVAN, J., concur. 

FOOTNOTES
1:  
McIntyre
 was decided prior to the enactment of the lien reduction statute, and although 
Larson 
was decided subsequent to the enactment of § 34-51-2-19, Larson dismissed his case against the defendants prior to the statute’s enactment because a settlement had been reached.