**COMMUNITY ACTION PROGRAM OF EVANSVILLE, Appellant,**

v.

**Marian L. VEECK, Appellee.**

**No. 93A02–0105–EX–264.**

Court of Appeals of Indiana.

Oct. 24, 2001.

Curt J. Angermeier, Evansville, Indiana, Attorney for Appellant.

Mark W. Rietman, Berger & Berger, Evansville, Indiana, Attorney for Appellee.

## OPINION

KIRSCH, Judge.

Community Action Program of Evansville, ("CAPE") appeals the decision of the Indiana Worker's Compensation Board ("Board") awarding payment of medical expenses to Marian L. Veeck, contending that Veeck was not eligible for payments by law because she was not an employee, but a paid volunteer. CAPE presents the following issues for review:

I. Whether Veeck, a participant in the Foster Grandparents program, was a volunteer entitled to medical payments under IC 22–3–2–2.3, or whether she received disqualifying compensation for her services.

II. Whether federal law preempts state worker's compensation laws, preventing Veeck from receiving coverage under Indiana's Worker's Compensation Act.

We affirm.

## FACTS AND PROCEDURAL HISTORY[1]

The Foster Grandparents program, also known as the Domestic Volunteer Service, is a federally-funded program administered by eligible local organizations, or sponsors. *See* 42 U.S.C.A. § 5011 *et seq.* Through the program, older persons act as foster grandparents, receiving assignments to help children with special or extraordinary needs by providing meaningful one-on-one attention. *See* 45 C.F.R. § 2552.11 *et seq.* Volunteer foster grandparents receive an hourly stipend and reimbursement of some expenses, in addition to other benefits. *Id.* Only individuals whose income does not exceed 125% of the poverty line established in the area are eligible to receive a stipend as foster grandparents. *Id.* Moreover, if both members of a married couple serve, only one may receive a stipend. *Id.* Veeck was a foster grandmother at Evansville Psychiatric Children Center ("Center") through the program administered by CAPE. As a participant in the program, Veeck worked twenty hours per week at the Center: four hours per day, five days per week. In return, she did not receive a salary, but did receive a stipend of $2.45 per hour for each hour worked.

On March 31, 1994, while working at the Center, Veeck tripped on a piece of furniture, fell, and broke her hip. The damage to her hip was irreparable, and she underwent hip replacement surgery the same day. Because of Veeck's injury, she was unable to return to work at the Center until August 1994. In addition, she incurred medical expenses for her surgery and follow-up care.

Veeck filed her Application for Adjustment of Claim with the Board. The single hearing member ruled that she was not entitled to worker's compensation benefits because she was not an employee, but that

---

1. We held oral argument on October 3, 2001.

she was entitled to payment of her unpaid medical expenses pursuant to IC 22–3–2–2.3. After CAPE requested a review by the full Board, the Board adopted the single hearing member award.

## DISCUSSION AND DECISION

 CAPE appeals the decision of the Board. In an appeal from a decision of the full Board, we are bound by the Board's factual determinations, and we will not reverse the findings unless it conclusively appears that "the evidence upon which the Board acted was so devoid of probative value or was so proportionately inadequate that the finding could not rest on a rational basis." *Calvary Temple Church, Inc. v. Paino*, 555 N.E.2d 190, 192 (Ind.Ct.App.1990) (quoting *Dane Trucking Co. v. Elkins*, 529 N.E.2d 117, 120–21 (Ind. Ct.App.1988), *trans. denied* (1989)). We must disregard all unfavorable evidence and must examine only that evidence and the reasonable inferences therefrom which support the Board's findings. *Rogers v. Bethlehem Steel Corp.*, 655 N.E.2d 73, 75 (Ind.Ct.App.1995).

 In reviewing the Board's decision, we will not reweigh the evidence or assess the credibility of the witnesses. *K–Mart Corp. v. Morrison*, 609 N.E.2d 17, 27 (Ind.Ct.App.1993), *trans. denied.* We employ a two-tiered standard of review. *Id.* We review the evidence in the record to see if there is any competent evidence of probative value to support the Board's findings. *Id.* We then examine the findings of fact to see if they are sufficient to support the decision. *Id.*

### I. Volunteer or compensated worker

CAPE argues that the Board erred in determining that Veeck was entitled to payment of her medical expenses under IC 22–3–2–2.3. IC 22–3–2–2.3(b) provides that volunteer workers at state institutions, while not entitled to other worker's compensation payments, are entitled to medical expenses under Worker's Compensation law. At the time this case arose, IC 22–3–2–2.3(a) defined "volunteer worker" as a person who performs services for a state owned and operated psychiatric institution for which the person does not receive compensation of any nature. Neither party disputes that Veeck performed services or that the Center is a state owned psychiatric institution. Rather, the debate centers on whether Veeck received compensation of any nature for doing so.

Other courts considering the issue of whether foster grandparents are employees have discussed whether such individuals are compensated. In *Murray State College v. Akins*, 794 P.2d 1218 (Okla.App. 1990), a foster grandmother filed a claim for worker's compensation after she injured her back while working in the program. The sponsor argued that she was not an employee. The court noted that the foster grandmother received a $2.20 per hour stipend, a meal, mileage reimbursement, medical examination, and accident and liability insurance. However, after examining the congressional committee report, the court concluded that it was the intent of Congress to prevent stipend and non-wage reimbursements received from participation in the program from being considered wages or compensation. Accordingly, the court held that the foster grandmother was not compensated and therefore not an employee. *Id.* at 1220.

Likewise, in *Wolf v. Workers' Comp. Appeal Bd.*, 705 A.2d 483 (Pa. Commw.Ct.1997), a foster grandmother filed a claim for worker's compensation benefits after she was injured while participating in the program. As a participant, she received personal liability insurance, accident insurance, transportation, and a $2.35 per hour stipend. In considering whether the foster grandmother was an employee, the court determined that the

grandmother did not receive compensation for her services. Rather, the court explained that the payments were intended to reimburse her for the incidental costs of providing volunteer services. This "nominal gratuity afforded to low-income foster grandparents ... is afforded so as to unburden low-income persons." *Id.* at 485. Thus, the court held that the payment was not compensation, and the foster grandmother was not an employee. *But see Sears v. Oakwood Training Facility Dep't of Human Res.*, 623 S.W.2d 232 (Ky.Ct. App.1980) (foster grandmother was employee because payment of hourly rate for tasks beneficial to enterprise was dependent upon her actual service).

We find the reasoning of the *Murray State College* and *Wolf* courts persuasive, particularly in light of the expressions of congressional intent and the explanation of the Foster Grandparent's program in the Code of Federal Regulations. First, 42 U.S.C.A. § 5058 provides:

> Notwithstanding any other provision of law no payment for supportive services or reimbursement of out-of-pocket expenses made to persons serving pursuant to subchapter II of this chapter shall be subject to any tax or charge or be treated as wages or compensation for the purposes of unemployment, temporary disability, retirement, public assistance, *workers' compensation,* or similar benefit payments, or minimum wage laws.

(Emphasis added.) The phrase "workers' compensation" was added to the statute by amendment in 1984. During discussions of the amendment, the committee stated: "The Amendment clarifies the intent of congress that the stipend received by participants in the older American volunteer programs is not compensation for the purpose of state workers' compensation programs." House of Representatives, the Committee on Education and Labor, Report No. 98–161, in HR–2655, p. 14, quoted in *Murray State College*, 794 P.2d at 1220. Thus, Congress clearly did not intend the payments to foster grandparents to be considered compensation.

Further, the Foster Grandparents program is regulated by the Corporation for National and Community Service ("CNCS"), and the CNCS has issued regulations governing the program. At the time Veeck had her accident, these regulations were found at 45 C.F.R. § 1208 (1997).[2] Under the program, eligible participants were not compensated, but received direct benefits, including "stipends." 45 C.F.R. § 1208.3–5 (1997). Specifically, the regulations define direct benefits to include the participant's stipend, insurance, meals, transportation, and other benefits the participant receives. It then states: "Direct benefits may not be subject to any tax or charge or be treated as wages or compensation for the purposes of unemployment insurance, temporary disability, retirement, public assistance, or similar benefit payments or minimum wage laws." 45 C.F.R. § 1208.3–5(b)(2)(c) (1997).[3]

---

2. They have since been revised and are currently found at 45 C.F.R. § 2552 (2000).

3. When this language was revised, worker's compensation was specifically added to the list: 45 C.F.R. § 2252.46 (2000) states that cost reimbursements of foster grandparents "are not subject to any tax or charge or treated as wages or compensation for the purposes of unemployment insurance, *work-*

*er's compensation,* temporary disability, retirement, public assistance, or similar benefit payments or minimum wage laws." (Emphasis added). The new regulations also more explicitly explain the purpose of the participant's stipend by defining the term as "[a] payment to Foster Grandparents to enable them to serve without cost to themselves." 45 C.F.R. § 2552.12(v) (1997). In light of the

■ Here, Veeck received an hourly stipend. The statute and the regulations specify that this payment was not intended to be compensation, but instead was a reimbursement of her expenses. As an uncompensated volunteer at a state-owned psychiatric hospital, Veeck was entitled to worker's compensation medical bills coverage under IC 22–3–2–2.3.

## II. Preemption

■ Additionally, CAPE contends that the issue of Veeck's entitlement to worker's compensation benefits is preempted by federal law, which it contends prevents foster grandparents from making claims under any state worker's compensation law, including IC 22–3–2–2.3 that allows payment of medical expenses. Specifically, it argues that federal law evidences an intent that foster grandparents be volunteers, not employees. Moreover, federal law requires it to provide accident insurance to foster grandparents. CAPE contends that this coverage was intended to replace worker's compensation coverage.

■ The preemption doctrine invalidates those state laws that interfere with, or are contrary to federal law. *HCA Health Servs. of Indiana, Inc. v. Gregory*, 596 N.E.2d 974, 976 (Ind.Ct.App.1992), *trans. denied*. The doctrine is based on the supremacy clause of the United States Constitution which provides in relevant part that the law of the United States "shall be the supreme law of the land . . . anything in the constitution or laws of any state to the contrary notwithstanding." U.S. CONST. art. VI, cl. 2. Three variations of federal preemption doctrine exist: 1)

express preemption, which occurs when a statute expressly defines the scope of its preemptive effect; 2) field preemption, which occurs when a pervasive scheme of federal regulation makes it reasonable to infer that Congress intended exclusive federal regulation of the area; and 3) conflict preemption, which occurs either where it is impossible to comply with both federal and state or local law, or where state law stands as an obstacle to the accomplishment and execution of federal purposes and objectives. *In re Guardianship of Wade*, 711 N.E.2d 851, 853–54 (Ind.Ct. App.1999).

■ The crucial question in any preemption analysis is always whether Congress intended that federal regulation supersede state law. *See Gorka v. Sullivan*, 671 N.E.2d 122, 125 (Ind.Ct.App.1996), *trans. denied* (1997). Accordingly, an understanding of the scope of a preemption statute relies on an understanding of congressional purpose, as discerned from the language of the preemption statute and the statutory framework surrounding it. *Rogers ex rel. Rogers v. Cosco, Inc.*, 737 N.E.2d 1158, 1163 (Ind.Ct.App.2000). Also relevant to the analysis is the "structure and purpose of the statute as a whole, as revealed not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." *Id.* (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486, 116 S.Ct. 2240, 2251, 135 L.Ed.2d 700 (1996)). Administrative regulations promulgated

---

statutory language, we view these alterations as clarifications rather than changes.

The newer version of the regulations also employs different terminology. The "direct benefits" language was changed to "cost reimbursements." 45 C.F.R. § 2552.12(i) (2000) defines "cost reimbursements" in part as "[r]eimbursements provided to volunteers

such as stipends to cover incidental costs, meals, and transportation, to enable them to serve without cost to themselves." The newer regulations also specify: "Foster Grandparents are volunteers, and are not employees of the sponsor, the volunteer station, the Corporation, or the Federal Government." 45 C.F.R. § 2552.44 (2000).

pursuant to congressional authorization have the same preemptive effect as federal statutes. *Id.* Courts do not lightly attribute to Congress or to a federal agency the intent to preempt state or local laws. *Id.* The historic police powers of the states are not to be superseded by federal law unless that was the clear and manifest purpose of Congress. *Id.*

In this case, CAPE concedes that there is no express statement in the applicable regulations that they have preemptive effect. CAPE maintains instead that federal law has preempted the field by providing a comprehensive mechanism for insuring elderly volunteers.

The regulations do require funded Foster Grandparent programs to provide specified minimum levels of accident and personal liability insurance to program participants. 45 C.F.R. § 1208.3–5(c)(1) (1997). The regulations continue:

> Accident insurance shall cover Foster Grandparents for personal injury during travel between their homes and places of assignment, during their volunteer service, during meal periods while serving as a volunteer, and while attending project-sponsored activities, such as recognition activities, orientation and Advisory Council meetings. Protection shall be provided against claims in excess of any benefits or services for medical care or treatment available to the volunteer from other sources, including:
>
> (A) Health insurance coverage;
>
> (B) Other hospital or medical service plans;
>
> (C) Any coverage under labor-management trusteed plans, union welfare plans, employer organization plans, or employee benefit organization plans; and

> (D) Coverage under any governmental programs, or coverage provided by any statute.

45 C.F.R. § 1208.3–5(c)(1)(i) (1997).[4] Although CAPE argues that this required insurance coverage preempts worker's compensation coverage and provides an alternate means of insuring foster grandparents, the regulations do not expressly state this. Instead, the regulations refer to the accident insurance as secondary to any benefits for treatments or services available to the foster grandparent from any other source, specifically including coverage under governmental programs and that provided by statute.

Courts in two other states have considered this issue, and both have concluded that worker's compensation coverage was preempted. In *United States v. Connors,* 634 F.Supp. 484 (S.D.Ohio 1985), a foster grandparent injured on assignment made a claim for worker's compensation benefits. After the Ohio Bureau of Workers' Compensation awarded her benefits, the sponsor appealed. On appeal, the court held that Ohio's policy of deeming foster grandparents employees under state worker's compensation laws was in conflict with and had been preempted by federal law. The court examined the language of the statute, its interpretation, and its legislative history. It noted that the statute and legislative history employ the term volunteer to distinguish participants from members of the workforce. It also noted the statutory directive in 42 U.S.C. § 5058 that foster grandparents' stipends should not be treated as wages for purposes of worker's compensation. Finally, the court noted that foster grandparent assignments must not include duties that would otherwise be performed by a paid employee. The court concluded that treating foster

---

4. This section is substantially the same in the revised version of the regulations, except the listing of examples is omitted. *See* 45 C.F.R. § 2552.52(b)(1) (2000).

grandparents as employees for purposes of state worker's compensation law would "impair the purposes and objectives of Congress in establishing the Foster Grandparent Program." *Id.* at 489.

Similarly, in *Murray State College,* 794 P.2d at 1218, the court held that state worker's compensation laws were preempted by federal law. The court in that case looked specifically at the committee discussion on the requirement that all program administrators provide accident insurance for foster grandparents. The committee stated:

> During committee consideration of this amendment, the agency assured the committee that adequate private carrier insurance policies are in place to protect the volunteers currently covered under state programs. The committee approved the amendment ... with the understanding that this private carrier coverage would be kept in place for all volunteers.

Conference report, report number 98–679, to accompany S. 1129, p. 26 (quoted in *Murray State College,* 794 P.2d at 1220–21). The court interpreted this language to mean that Congress intended the required accident insurance to substitute for worker's compensation coverage for foster grandparents. The court held that allowing foster grandparents to receive worker's compensation benefits would conflict with congressional objectives and state law was therefore preempted. `Murray State College,* 794 P.2d at 1221.

■ Both of these courts essentially found that state worker's compensation laws were impliedly preempted because it would contravene congressional intent to pay worker's compensation benefits to foster grandparents. However, these cases are distinguishable because Indiana has

carved out a specific group which ordinarily would not be covered by worker's compensation (volunteers at state psychiatric hospitals),[5] and which includes a subset of the foster grandparents serving in the state to award limited worker's compensation benefits. Federal law does not prevent states from enacting special legislation to provide additional coverage beyond the accident insurance required. Were we interpreting the general worker's compensation scheme, we might find that program participants are not entitled to worker's compensation coverage. However, Indiana legislators have chosen to act and provide coverage for medical expenses to volunteers working in state institutions. We see no reason why Indiana cannot provide such coverage if it chooses to do so.

■ The Worker's Compensation Act is for the benefit of the employee and "should be liberally construed so as not to negate the Act's humane purposes." *Lowell Health Care Ctr. v. Jordan,* 641 N.E.2d 675, 678 (Ind.Ct.App.1994) (quoting *Frampton v. Cent. Indiana Gas Co.,* 260 Ind. 249, 251, 297 N.E.2d 425, 427 (1973)); *Hass v. Shrader's Inc.,* 534 N.E.2d 1119, 1121 (Ind.Ct.App.1989). In light of such remedial purposes and Indiana legislators' clear intent to provide medical payment benefits to volunteer workers, we find that the Board did not err in awarding medical payments to Veeck.

Affirmed.

BAILEY, J., and BROOK, J., concur.

---

5. Other states, such as Pennsylvania, have analogous provisions for volunteer rescue personnel, including firefighters and ambulance corpsmen, but do not provide coverage for volunteer workers at state institutions. *See, e.g., Wolf,* 705 A.2d at 485–86.