**BONDEX INTERNATIONAL, et al., Appellants–Defendants,**

v.

**Shirley OTT, in her Individual Capacity, and also as Personal Representative of the Estate of Jerome Ott, Deceased, Appellee–Plaintiff.**

No. 02A03–0112–CV–412.

Court of Appeals of Indiana.

Aug. 23, 2002.

Douglas B. King, James M. Boyers, Wooden & McLaughlin LLP, Indianapolis, IN, Attorneys for Bondex International, Inc.

R. Troy Mulder, Janelle K. Linder, Riley Bennett & Egloff, LLP, Indianapolis, IN, Attorneys for McCord Gasket Co.

Michael A. Bergin, Julie Blackwell Gelinas, Daniel M. Long, Locke Reynolds LLP, Indianapolis, IN, Attorneys for AlliedSignal Inc.

Jennifer Blackwell, Goodin, Oreske & Blackwell, P.C., Indianapolis, IN, Attorney for Borg–Warner Corp.

Robert E. Paul, Paul Reich & Myers, P.C., Philadelphia, PA, Neal Lewis, Lewis & Associates, Orland, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Statement of the Case

Bondex International, Inc., AlliedSignal Inc., McCord Gasket Co., and Borg–Warner Corp. (collectively, the Defendants) bring this discretionary interlocutory appeal of the order denying their requests to designate bankrupt former manufacturers of asbestos-containing products as nonparties in a suit initiated by Shirley Ott in her individual and representative capacities (Ott). The trial court concluded that the

nonparty provisions of the Indiana Comparative Fault Act conflict with the automatic stay provision of the Federal Bankruptcy Code. Because the proportional allocation of fault to a bankrupt nonparty under the Comparative Fault Act does not constitute an action or proceeding "against the debtor" in contravention of federal bankruptcy law, we reverse the order.

## Facts and Procedural History

Jerome Ott was diagnosed with lung cancer in 1998. On September 10, 1999, Jerome and his wife, Shirley, filed suit against the Defendants and 42 others, claiming that Jerome had been injured by exposure to asbestos-containing products at various sites from 1949 to 1974. Jerome died in January of 2000, and Shirley was appointed personal representative of his estate. In that capacity, she amended the complaint to assert a wrongful death claim.

The Defendants unsuccessfully moved for summary judgment, and they appealed the underlying orders.[1] Thereafter, the Defendants sought leave to amend their answers by adding various nonparties, four of whom were the subjects of bankruptcy proceedings.[2] The trial court concluded that naming the bankrupt entities as nonparties "could result in possible imposition of liability on [them] in violation of section 362 of the Bankruptcy Act [automatic stay provision] and subject the Court and the parties herein to contempt of the Bankruptcy Court." Appellants' App. p. 108–09.

The trial court certified its order for interlocutory appeal. The Defendants petitioned this Court to accept jurisdiction of the appeal and also petitioned the Indiana Supreme Court for emergency transfer. Our supreme court denied their petitions. Thereafter, this Court accepted jurisdiction over the appeal.

## Discussion and Decision

The Defendants claim error in the denial of their requests to amend their answers. Amendments to the pleadings are to be liberally allowed so that the jury is presented with all issues involved in a lawsuit. *Kuehl v. Hoyle,* 746 N.E.2d 104, 107 (Ind.Ct.App.2001). However, the trial court has broad discretion in granting or denying amendments to the pleadings, and we will reverse only upon a showing of abuse of that discretion. *Id.* "Discretion is a privilege afforded a trial court to act in accord with what is fair and equitable in each case." *Vernon v. Kroger Co.,* 712 N.E.2d 976, 982 (Ind.1999) (quoting *McCullough v. Archbold Ladder Co.,* 605 N.E.2d 175, 180 (Ind.1993)). The trial court abuses that discretion if its decision is clearly against the logic and effect of the facts and circumstances of the case or if the court misinterprets the law. *Vernon,* 712 N.E.2d at 982. When determining whether the trial court misinterpreted the statutes at issue, we review the statutes de novo, giving words their plain, ordinary, and usual meaning unless a contrary purpose is clearly shown by the statute itself.

---

1. On February 15, 2001, the trial court denied Bondex International, Inc.'s motion for summary judgment regarding proximate causation. This Court denied Bondex's Motion to Accept Jurisdiction of the corresponding interlocutory appeal. On July 20, 2001, the trial court denied the Defendants' motions for summary judgment based on the Product Liability Act's statute of repose. The Indiana Supreme Court accepted emergency transfer of the appeal of that order. Oral argument

was heard on May 16, 2002, and our supreme court presently has that appeal under advisement.

2. The designated bankrupt former manufacturers of asbestos-containing products are GAF Corp., Armstrong World Industries, Inc., Asbestos Claims Management Corp., and Owens–Corning, Inc.

*Parkview Hosp., Inc. v. Roese,* 750 N.E.2d 384, 386 (Ind.Ct.App.2001), *reh'g denied, trans. denied.*

 At issue here are Section 362 of the Federal Bankruptcy Code and the Indiana Comparative Fault Act. Under the Supremacy Clause of the United States Constitution, federal law is the supreme law of the land. U.S. Const. art. VI, cl. 2; *Gibson v. Hand,* 756 N.E.2d 544, 546 (Ind.Ct.App.2001). The preemption doctrine invalidates those state laws that interfere with or are contrary to federal law. *Community Action Program of Evansville v. Veeck,* 756 N.E.2d 1079, 1084 (Ind.Ct.App.2001). Three variations of federal preemption doctrine exist: (1) express preemption, occurring when a statute expressly defines the scope of its preemptive effect; (2) field preemption, occurring when a pervasive scheme of federal regulation makes it reasonable to infer that Congress intended exclusive federal regulation of the area; and (3) conflict preemption, occurring either where it is impossible to comply with both federal and state or local law, or where state law stands as an obstacle to the accomplishment and execution of federal purposes and objectives. *Id.*

This case involves conflict preemption. In particular, we are asked to decide whether the nonparty provisions of the Comparative Fault Act are at odds with Section 362, the automatic stay provision of the Bankruptcy Code. Section 362 pro-

vides that a petition for bankruptcy operates as a stay of the commencement or continuation of an action or proceeding "against the debtor." 11 U.S.C. § 362.[3] Under Section 362(a), the filing of a bankruptcy petition stays proceedings involving the debtor's property. *Matter of C & S Grain Co.,* 47 F.3d 233, 237–38 (7th Cir. 1995), *reh'g denied.* The automatic stay provisions of Section 362 apply to proceedings or acts against the debtor, the debtor's property, and the property of the estate, but do not apply to acts against property which is neither the debtor's nor the estate's. *United States (EPA) v. Envtl. Waste Control, Inc.,* 131 B.R. 410, 420 (N.D.Ind.1991), *aff'd, Supporters to Oppose Pollution, Inc. v. Heritage Group,* 973 F.2d 1320 (7th Cir.1992), *reh'g denied.*

Application of comparative fault in product liability cases is governed by Indiana Code § 34–20–8–1, which reads:

(a) In a product liability action, the fault of the person suffering the physical harm, as well as the fault of all others who caused or contributed to cause the harm, shall be compared by the trier of fact in accordance with IC 34–51–2–7, IC 34–51–2–8, or IC 34–51–2–9.

(b) In assessing percentage of fault, the jury shall consider the fault of all persons who contributed to the physical harm, regardless of whether the person was or could have been named as a party, as long as the nonparty was al-

3. The statute provides in part:
(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—
(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
. . . .
(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; . . .
11 U.S.C. § 362(a).

leged to have caused or contributed to cause the physical harm.

"Nonparty" is defined as "a person who caused or contributed to cause the alleged injury, death, or damage to property but who has not been joined in the action as a defendant." Ind.Code § 34–6–2–88; *Bulldog Battery Corp. v. Pica Invs., Inc.*, 736 N.E.2d 333, 338 (Ind.Ct.App.2000), *reh'g denied.* Under Indiana's comparative fault system, each defendant is responsible only for its share of the total liability. *R.L. McCoy, Inc. v. Jack*, 772 N.E.2d 987, 989–990 (Ind.2002).

Ott does not challenge the bankrupt manufacturers' qualifications as nonparties under the Comparative Fault Act or the timeliness of the Defendants' motions. *Cf. Owens Corning Fiberglass Corp. v. Cobb*, 754 N.E.2d 905 (Ind.2001) (discussing in summary judgment context whether nonparties were responsible for plaintiff's injuries and whether defendant was out of time to add nonparties). Instead, she insists that designating the bankrupt manufacturers as nonparties "would have an impact on the bankrupt[s'] estates as it would set up plaintiff with a liquidated claim in bankruptcy improperly and outside bankruptcy." Appellee's Br. p. 4. An examination of Indiana Code § 34–51–2–8 proves otherwise. The statute provides:

(a) This section applies to an action based on fault that:

(1) is brought against two (2) or more defendants; and

(2) is tried to a jury.

(b) The court, unless all the parties agree otherwise, shall instruct the jury to determine its verdict in the following manner:

(1) *The jury shall determine the percentage of fault of the claimant, of the defendants, and of any person who is a nonparty.* The jury may not be informed of any immunity defense that might be available to a nonparty. *In assessing percentage of fault, the jury shall consider the fault of all persons who caused or contributed to cause the alleged injury, death, or damage to property, tangible or intangible, regardless of whether the person was or could have been named as a party.* The percentage of fault of parties to the action may total less than one hundred percent (100%) if the jury finds that fault contributing to cause the claimant's loss has also come from a nonparty or nonparties.

(2) If the percentage of fault of the claimant is greater than fifty percent (50%) of the total fault involved in the incident which caused the claimant's death, injury, or property damage, the jury shall return a verdict for the defendants and no further deliberation of the jury is required.

(3) If the percentage of fault of the claimant is not greater than fifty percent (50%) of the total fault, the jury shall then determine the total amount of damages the claimant would be entitled to recover if contributory fault were disregarded.

(4) The jury next shall *multiply the percentage of fault of each defendant by the amount of damages* determined under subdivision (3) and shall *enter a verdict against each defendant* (and such other defendants as are liable with the defendant by reason of their relationship to a defendant) in the amount of the *product of the multiplication of each defendant's percentage of fault times the amount of damages* as determined under subdivision (3).

I.C. § 34–51–2–8 (emphasis added). Under our comparative fault regime, the jury allocates fault among all who caused or contributed to cause the alleged injury or death, including designated nonparties,

even if those nonparties may not be liable to the plaintiff. *Bulldog Battery*, 736 N.E.2d at 338. However, the jury computes damages and enters a verdict only against each defendant.[4] I.C. § 34–51–2–8(b). By definition, nonparties are not joined in the action as defendants. I.C. § 34–6–2–88; *Owens Corning*, 754 N.E.2d at 914 (noting that named defendants could not be added as nonparties). Thus, allocation of fault to nonparties does not create an award of damages, money judgment, or "liquidated claim" against the bankrupt nonparties or their property and does not affect the bankruptcy estates. *See Owens Corning*, 754 N.E.2d at 915–16 n. 15 (stating that on remand the trial court could reconsider its determination that the defendant not be permitted to assert a nonparty affirmative defense with respect to an effectively insolvent trust).

Further, any allocation of fault to the bankrupt nonparties could not be used against them in a subsequent legal action through application of the collateral estoppel doctrine. When considering whether to allow the use of offensive collateral estoppel, a trial court must consider two factors: "whether the party against whom the judgment is pled had a full and fair opportunity to litigate the issue, and whether it would be otherwise unfair under the circumstances of the particular case to apply collateral estoppel." *Hayworth v. Schilli Leasing, Inc.*, 669 N.E.2d 165, 167 (Ind.1996). First, there is no judgment entered against nonparties. Additionally, collateral estoppel could not be invoked against the bankrupt nonparties because, as nonparties, they would not have had a full and fair opportunity to defend themselves in the underlying suit.

4. The result is the same where an action is brought against a single party defendant, Ind. Code § 34–51–2–7, and where the action is

### Conclusion

The allocation of fault to bankrupt nonparties under the Comparative Fault Act does not result in "liquidated claims" and does not affect the debtors' property or the bankruptcy estates. Consequently, adding a nonparty defense under the Comparative Fault Act does not constitute an action or proceeding "against the debtor" under Section 362 of the Bankruptcy Code. The trial court misinterpreted the law when it decided that the nonparty provisions of the Comparative Fault Act conflict with the Bankruptcy Code and, on that basis, denied the Defendants' motions for leave to designate bankrupt former manufacturers of asbestos-containing products as nonparties. We reverse that ruling and remand this cause for proceedings consistent with this opinion.

Reversed and remanded.

BAKER, J., and BARNES, J., concur.

tried by the court without a jury. Ind.Code § 34–51–2–9.