


FILED
Jul 17 2024, 9:23 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

In Re the Guardianship of:

Anthony Adducci, Incapacitated Person

Indiana Family and Social Services Administration,

*Appellant-Intervenor*

v.

Cheryl Adducci, Guardian for Anthony Adducci,

*Appellee-Petitioner*

---

July 17, 2024

Court of Appeals Case No.
23A-GU-2433

Appeal from the Lake Superior Court

The Honorable Calvin D. Hawkins, Judge

Trial Court Cause No.
45D02-1905-GU-132

---

**Opinion by Judge Bradford**
Judges Crone and Tavitas concur.

**Bradford, Judge.**

# Case Summary

In 2019, Cheryl Adducci was appointed guardian of her institutionalized husband Anthony, applied for Medicaid coverage on his behalf, and (before Anthony's Medicaid application had been approved) petitioned to divert some of his income for her support ("the Petition"), which petition the trial court granted (in "the Support Order"). The Indiana Family and Social Services Administration ("FSSA") provisionally granted Anthony's Medicaid application and eventually moved to intervene in the case and for relief from judgment, also arguing that the Support Order, which had the effect of increasing the amount FSSA must pay for Anthony's care, was unlawful. The trial court denied FSSA's motions to intervene and for relief from judgment and reiterated that the Support Order was lawful.

FSSA argues that it had a right to intervene in the action because the Support Order diverted money to Cheryl that would have otherwise gone to pay Anthony's medical bills and it had no other way to challenge it. FSSA also argues that it was entitled to relief from judgment because it was a necessary party to the action who had not been served, rendering the Support Order void. Finally, FSSA argues that the Support Order is without legal basis. Because we agree with all of FSSA's contentions, we reverse the trial court's denials of FSSA's motions to intervene and for relief from judgment and remand with instructions.

## Facts and Procedural History

[3] On May 31, 2019, Cheryl was appointed guardian of her husband Anthony, who had suffered a traumatic brain injury resulting in dementia and a brain aneurysm, leaving him unable to care for himself or his assets. On June 17, 2019, Cheryl filed, *inter alia*, the Petition. On July 2, 2019, Cheryl applied for Medicaid coverage on Anthony's behalf. On July 16, 2019, the trial court issued the Support Order, which allowed Cheryl to transfer up to $3275.00 of Anthony's income per month for her care, maintenance, and support. In August of 2019, the Adduccis notified FSSA of the Support Order. On August 30, 2019, FSSA approved Anthony's application for Medicaid coverage while also noting that, prior to the Support Order, he had not been eligible for Medicaid coverage because his income, as well as his and Cheryl's resources, exceeded applicable limits.

[4] On July 14, 2020, FSSA moved to intervene in the guardianship case and for relief from judgment, arguing that it was a necessary party because the Support Order meant that Indiana's Medicaid program (which is administered by FSSA) would have to pay for Anthony's care and that it was entitled to relief from judgment because it had not been served. During the litigation of FSSA's motions, FSSA also argued that the Support Order was unlawful because the mandatory fair hearing in the FSSA had never occurred, the doctrine of necessaries did not entitle Cheryl to spousal support, and Cheryl had violated her fiduciary duty to Anthony. The Adduccis argued that FSSA (1) had not moved for relief from judgment within a reasonable time, (2) had not been a

necessary party to the guardianship proceedings, (3) and lacked standing to claim that Cheryl had violated her fiduciary duty. The Adduccis also argued that Indiana Code section 12-15-2-25 ("the State Medicaid Statute") and the doctrine of necessaries supported the Support Order.

On September 14, 2023, the trial court denied FSSA's motions to intervene and for relief from judgment and, alternatively, concluded that FSSA was barred from taking advantage of the equitable remedy of relief from judgment because it had not engaged in mandatory rulemaking pursuant to Indiana Code section 12-15-2-25(d) and, therefore, had unclean hands. The trial court also concluded that Cheryl's allowance was supported by the State Medicaid Statute and the doctrine of necessaries.

## Discussion and Decision

### I. Background

In the Medicaid program, the federal government provides funding to states, which in turn reimburse qualifying individuals for the cost of medical care. *Wis. Dep't of Health & Fam. Servs. v. Blumer*, 534 U.S. 473, 479 (2002) (citing *Schweiker v. Gray Panthers*, 453 U.S. 34, 36–37 (1981)). For institutionalized individuals, Medicaid starts with the presumption that the individual must pay all of his income, minus certain permitted deductions, to the institutions caring for him before he can qualify for assistance. *See Lowes v. Lowes*, 650 N.E.2d 1171, 1175 (Ind. Ct. App. 1995) ("Congress intended that all third party sources of income to which an applicant is entitled be exhausted before resort to the social welfare system.").

[7]     It was eventually realized that this exhaustion requirement, at times, left the community spouse[1] with insufficient resources, which prompted Congress to pass the Medicare Catastrophic Coverage Act of 1988 ("the MCCA"). 42 U.S.C. § 1396r-5. The stated purpose of the MCCA was to "end th[e] pauperization of the community spouse by assuring that the community spouse has a sufficient—but not excessive—amount of income and resources available[.]" *Blumer*, 534 U.S. at 480. In some cases, an institutionalized spouse is permitted to transfer a "community spouse monthly income allowance" without that amount being counted against him for eligibility-determination purposes. 42 U.S.C. § 1396r-5(d)(3). The exact amount of the monthly income allowance is determined by subtracting a community spouse's actual monthly earnings from a "minimum monthly maintenance needs allowance" ("the Allowance"), which is set by the State. 42 U.S.C. § 1396r-5(d)(2)–(3). If this calculation results in a shortfall between the community spouse's monthly income and the Allowance, the community spouse's monthly income allowance becomes the difference between the two amounts. 42 U.S.C. § 1396r-5(d)(2).

[8]     Either spouse may petition for a "fair hearing before the State agency[,]" *i.e.*, FSSA, to argue that the Allowance should be increased. 42 U.S.C. § 1396r-5(e)(2)(B); *see also* 42 U.S.C. § 1396a(a)(3) (defining "fair hearing"). Pursuant to

---

[1] In the Medicaid context, "[t]he term 'community spouse' means the spouse of an institutionalized spouse." 42 U.S.C. § 1396r-5(h)(2).

this provision, the Allowance may be increased if the spouses establish "that the community spouse needs income, above the level otherwise provided by the [Allowance], due to exceptional circumstances resulting in significant financial duress." 42 U.SC. § 1396r-5(e)(2)(B). In some cases, such as this one, the Allowance would have to be increased for the institutionalized spouse to be eligible for Medicaid benefits at all.

[9] At the state level, the State Medicaid Statute provides that institutionalized Medicaid recipients who have a community spouse may "retain an income allowance for the purpose of supporting a community spouse" if "(1) the community spouse's income is less than the [Allowance]" established under federal law; and "(2) an increased amount is necessary to increase the community spouse's income to the [Allowance]." Ind. Code § 12-15-2-25(b). The State Medicaid Statute provides that "[i]f either spouse establishes that a higher allowance is needed due to exceptional circumstances resulting in significant financial duress, the [Allowance] may be increased *after an administrative hearing or by a court order*." Ind. Code § 12-15-2-25(c) (emphasis added).

## II.  Intervention

[10] FSSA contends that, because it was a necessary party to the guardianship action, the trial court abused its discretion in denying its motion to intervene. Motions to intervene in an action involve a mixed question of law and fact, and trial courts have discretion to determine whether a movant has met its burden of showing that it is entitled to intervene. *Citimortgage, Inc. v. Barabas*, 975

N.E.2d 805, 812 (Ind. 2012). A trial court's ruling on a motion to intervene is reviewed for an abuse of discretion, and the facts alleged in the motion are taken as true. *JPMorgan Chase Bank, N.A. v. Claybridge Homeowners Ass'n, Inc.*, 39 N.E.3d 666, 669 (Ind. 2015). An order denying a motion to intervene will be reversed if the decision is "clearly against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law." *Abbott v. State*, 183 N.E.3d 1074, 1083 (Ind. 2022).

[11] Intervention is the procedure through which nonparties may assert their rights in an ongoing lawsuit. *See Citimortgage*, 975 N.E.2d at 812. Indiana's intervention procedures are governed by Indiana Trial Rule 24, which "expressly recognizes the right of a party to intervene after judgment for the purposes of presenting a motion under Trial Rule 60." *Id*. Mandatory intervention is governed by Subsection (A)(2), which provides that a trial court *must* permit a third party to intervene in an action

> when the applicant claims an interest relating to a property, fund or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect his interest in the property […] unless the applicant's interest is adequately represented by existing parties.

Ind. Trial Rule 24(A)(2).

[12] Keeping in mind that facts alleged in FSSA's motion to intervene must be accepted as true, FSSA has established a clear interest in this proceeding, specifically that

[t]he FSSA is harmed by the Court's Order because […] the community spouse's income allowance is deducted from the amount of income that a Medicaid member must pay to his or her long-term care institution post-eligibility. Therefore, if the community spouse's income is artificially and unlawfully inflated above the limits established by statute, the institutionalized spouse will pay a lower proportion of his or her income to the institution, and the Medicaid Program will have to pay a higher amount to cover the remainder of the medical costs.

Appellant's App. Vol. II p. 51. Moreover, FSSA's ability to protect this interest is clearly impeded by this proceeding. As FSSA notes, it cannot adjust Cheryl's allowance on its own because it is bound by court orders on spousal support, even if erroneous.[2] Finally, it is undisputed that no party to the guardianship action, one result of which was the Support Order, adequately represented FSSA's interests. In summary, we have little hesitation in concluding that FSSA has a right to intervene in this action and that the trial court abused its discretion in denying its motion to do so. *See In re Guardianship of Weber*, 201 N.E.3d 220, 225–27 (Ind. Ct. App. 2022) (affirming the trial court's grant of FSSA's motion to intervene post-judgment where the court had ordered spousal support from an incapacitated spouse).

## III. Motion for Relief from Judgment

[13] FSSA also contends that the trial court also abused its discretion in denying its motion for relief from judgment. Indiana Trial Rule 60(B) is an equitable form

---

[2] "If a court has entered an order against an institutionalized spouse for monthly income for the support of the community spouse, the community spouse monthly income allowance for the spouse shall be not less than the amount of the monthly income so ordered." 42 U.S.C. § 1396r-5(d)(5).

of relief that authorizes courts to reopen a previously-issued judgment for any of one of eight enumerated grounds, one of which is that the judgment is void. Ind. Trial Rule 60(B)(6); *In re Paternity of P.S.S.*, 934 N.E.2d 737, 740–41 (Ind. 2010). When a party moves for relief from judgment pursuant to Trial Rule 60(B)(6), the sole issue before the court is whether the judgment in question is void or valid. *Anderson v. Wayne Post 64, Am. Legion Corp.*, 4 N.E.3d 1200, 1205 (Ind. Ct. App. 2014), *trans. denied*.

[14] "[A] judgment entered where there has been no service of process is void for want of personal jurisdiction." *Front Row Motors, LLC v. Jones*, 5 N.E.3d 753, 759 (Ind. 2014). Moreover, "a judgment that is void for lack of personal jurisdiction may be collaterally attacked at any time and [...] the 'reasonable time' limitation under Rule 60(B)(6) means no time limit." *Stidham v. Whelchel*, 698 N.E.2d 1152, 1156 (Ind. 1998). FSSA, a necessary party below, was never served, thereby depriving the trial court of personal jurisdiction over it, and the fact that it waited many months to act makes no difference. Consequently, the trial court abused its discretion in denying FSSA's motion for relief from the judgment pursuant to Trial Rule 60(B)(6).[3]

[15] FSSA contends that the trial court also abused its discretion by concluding that FSSA was not entitled to Rule 60(B) relief because it had failed to "adopt rules

---

[3] FSSA also argues that it is entitled to relief from judgment pursuant to Trial Rule 60(B)(2) (allowing for relief on "any ground for a motion to correct error") and 60(B)(8) (allowing for relief for "any reason justifying relief from judgment"). Because we have concluded that FSSA is entitled to relief from judgment pursuant to Trial Rule 60(B)(6), we need not address these other alleged grounds.

[…] setting forth the manner in which the office will determine the existence of exceptional circumstances resulting in significant financial duress[.]" Indiana Code Section 12-15-2-25(d). (Appellant's App. Vol. II p. 200). The trial court's identification of FSSA's failure to make rules for determining the existence of exceptional circumstances appears to invoke the equitable doctrine of "unclean hands":

> The principle of unclean hands is that he who comes into equity must come with clean hands. The doctrine of unclean hands is not favored and must be applied with reluctance and scrutiny. For the doctrine of unclean hands to apply, the misconduct must be intentional, and the wrong that is ordinarily invoked to defeat a claimant by using the unclean hands doctrine must have an immediate and necessary relation to the matter before the court.

*Wedgewood Cmty. Ass'n, Inc. v. Nash*, 781 N.E.2d 1172, 1178 (Ind. Ct. App. 2003), *trans. denied*.

[16] Under the circumstances, we fail to see why FSSA should be barred from pressing its claims by unclean hands. First, there is nothing in the record to suggest that FSSA's failure to make rules can fairly be characterized either as misconduct or intentional. Moreover, there is no immediate and necessary relation of FSSA's deferred rulemaking to the matter before the court, which had nothing to do with whether FSSA had incorrectly found that exceptional circumstances had not existed because of a lack of rules, but, rather, whether the Adduccis had followed the proper procedure to obtain the Support Order.

## IV. The Support Order

[17] Having concluded that the Support Order is void, we deem it necessary to provide guidance for the trial court regarding further proceedings by addressing the grounds the trial court cited to sustain the Support Order.

### A. The State Medicaid Statute

[18] The trial court concluded that the State Medicaid Statute supports the Support Order, *i.e.*, the Support Order is justified by the trial court's finding of exceptional circumstances that would result in significant financial duress to Cheryl in the absence of support. FSSA contends that the Allowance cannot be increased without an administrative hearing, while the Adduccis contend that the trial court's finding of exceptional circumstances renders an administrative hearing unnecessary. We agree with FSSA. As mentioned, the MCCA *requires* a "fair hearing before the State agency" to determine if the Allowance should be increased, 42 U.S.C. § 1396r-5(e)(2)(B), and it is well-settled that "under the Supremacy Clause of the United States Constitution, federal law is the supreme law of the land." *Kuehne v. United Parcel Serv., Inc.*, 868 N.E.2d 870, 873–74 (Ind. Ct. App. 2007) (citing U.S. Const. art. VI, cl. 2; *Bondex Int'l v. Ott*, 774 N.E.2d 82, 85 (Ind. Ct. App. 2002)). "The preemption doctrine invalidates those state laws that interfere with or are contrary to federal law." *Id.* (citing *Cmty. Action Program of Evansville v. Veeck*, 756 N.E.2d 1079, 1084 (Ind. Ct. App. 2001). "[S]tate law is […] preempted to the extent it actually conflicts with federal law, that is, when it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the

full purposes and objectives of Congress[.]" *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984). "The question, at bottom, is one of statutory intent, and we accordingly begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992).

To the extent that the State Medical Statute may be read to allow for the Allowance to be increased without an FSSA hearing, it is in conflict with the MCCA's requirement of a "fair hearing before the State agency" and is therefore preempted. *See Blumer*, 534 U.S. at 478 ("The MCCA allows an increase in the standard allowance if either spouse shows, *at a state-administered hearing*, that the community spouse will not be able to maintain the statutorily defined minimum level of income on which to live after the institutionalized spouse gains Medicaid eligibility.") (emphasis added). Should the Adduccis wish to have the Allowance increased, they must first avail themselves of FSSA's administrative processes.

## B. The Doctrine of Necessaries

The trial court also concluded that the doctrine of necessaries justified Cheryl's increased allowance. In Indiana, the doctrine operates as follows:

> Each spouse is primarily liable for his or her independent debts. Typically, a creditor may look to a non-contracting spouse for satisfaction of the debts of the other only if the non-contracting spouse has otherwise agreed to contractual liability or can be said to have authorized the debt by implication under the laws of

agency. When, however, there is a shortfall between a dependent spouse's necessary expenses and separate funds, the law will impose limited secondary liability upon the financially superior spouse by means of the doctrine of necessaries. We characterize the liability as "limited" because its outer boundaries are marked by the financially superior spouse's ability to pay at the time the debt was incurred. It is "secondary" in the sense that it exists only to the extent that the debtor spouse is unable to satisfy his or her own personal needs or obligations.

*Bartrom v. Adjustment Bureau, Inc.*, 618 N.E.2d 1, 8 (Ind. 1993). "Agency requires some indicia that the principal intended or authorized the agent to conduct business on his or her behalf." *Hickory Creek at Connersville v. Estate of Combs*, 992 N.E.2d 209, 212 (Ind. Ct. App. 2013) (citing *Quality Foods, Inc. v. Holloway Assocs. Prof'l Eng'rs & Land Surveyors, Inc.*, 852 N.E.2d 27, 31–32 (Ind. Ct. App. 2006). "Marriage alone is insufficient." *Id.*

[21]     We conclude that the Support Order also cannot be sustained by operation of the doctrine of necessaries. First, Cheryl has failed to establish that Anthony has the ability to pay her expenses or is the financially-superior spouse. As mentioned, the limits of liability pursuant to the doctrine of necessaries are marked by the financially-superior spouse's ability to pay. *See Bartrom*, 618 N.E.2d at 8. The Support Order's findings indicate that, as of July of 2019, Anthony's monthly income from Social Security and a pension was $4960.50.[4] Anthony's obligations, however, have exceeded his income at all relevant

---

[4] In its Brief of Appellant and in several filings below, FSSA puts Anthony's income at $3275.00 per month. The Adduccis, however, claimed in the Petition that Anthony's income was $4960.50 per month (as of July of 2019), and the record does not appear to contain any more recent information on the subject. Either way, Anthony's income is exceeded by his obligations.

times, starting at $5597.05 per month in July of 2019 and rising to $6919.51 per month by the end of 2021. Because Anthony's income does not even cover his own obligations (which, again, are his primary responsibility), *id.*, the Adduccis cannot establish that he has the ability to cover Cheryl's expenses or is financially superior to her. Moreover, the Adduccis point to nothing in the record that could support a finding that Anthony agreed to contractual liability to pay Cheryl's expenses or could be said to have authorized them by implication under the laws of agency. The Adduccis have failed to establish that the Support Order may be justified by the doctrine of necessaries.

[22] The Adduccis do not actually claim that they have satisfied the elements of the doctrine of necessaries, arguing only that our decision in *Matter of Guardianship of Hall*, 694 N.E.2d 1168 (Ind. Ct. App. 1998), supports a spousal-support order in cases where one spouse's living expenses exceed that spouse's income. While this may be true in some situations, *Hall* is easily distinguished. In *Hall*, the guardianship estate of the institutionalized husband had assets of $176,705.45 and monthly income of $1789.00, while the wife had assets of $7055.52 and monthly income of $638.50. *Id.* at 1169. In short, the record supported a determination that the institutionalized spouse was financially-superior and able to cover wife's expenses, which is not the case here. In *Hall*, the record also supported an inference that the husband had impliedly agreed to cover the Wife's expenses before his incapacitation, as he had paid them after insisting that she cease her gainful employment. *Id.* at 1170. Again, there is

nothing similar in the record before us here. The Adduccis' reliance on *Hall* is unavailing.

## Conclusion

[23] We conclude that the trial court abused its discretion in denying FSSA's motion to intervene and in denying FSSA's motion for relief from judgment. Because we also conclude that neither the State Medicaid Statute nor the doctrine of necessaries sustains the Support Order, we remand with instructions to grant FSSA's motion to intervene, grant FSSA's motion for relief from judgment, and vacate the Support Order.[5]

[24] We reverse the judgment of the trial court and remand with instructions.

Crone, J., and Tavitas, J., concur.

ATTORNEYS FOR APPELLANT

Theodore E. Rokita
Indiana Attorney General

Evan Matthew Comer
Supervising Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Michael T. Foster
Greensburg, Indiana

---

[5] We are aware that a probable consequence of our disposition is FSSA's withdrawal of Anthony's Medicaid coverage because, as mentioned, without the Support Order in place, the Adducci's income and assets are too large to qualify for Medicaid coverage. Nothing in this opinion, however, should be understood as preventing the Adduccis from again applying for Medicaid and/or attempting to increase the Allowance through FSSA's administrative processes.