The HOUSING AUTHORITY OF the CITY OF SOUTH BEND, Appellant–Defendant,

v.

Ricky GRADY, Appellee/Plaintiff,

v.

Robert Clark, Defendant.

No. 71A03–0312–CV–490.

Court of Appeals of Indiana.

Sept. 22, 2004.

Joseph Stalmack, Hammond, IN, Attorney for Appellant.

Peter J. Agostino, South Bend, IN, Attorney for Appellee.

## OPINION

HOFFMAN, Senior Judge.

Defendant–Appellant The Housing Authority of the City of South Bend ("Housing Authority") appeals the determination of the trial court denying its motion for summary judgment.[1] We reverse and remand.

The Housing Authority presents three issues with regard to the trial court's denial of its motion for summary judgment. Restated, these issues are as follows:

I. Whether federal law preempts Grady's state law claim of negligence.

II. Whether the Housing Authority owed a common law duty to Grady.

III. Whether the Housing Authority assumed a duty of care with regard to Grady.

Robert Clark owns a residence in South Bend, Indiana, which he leased to LaShonda James. James received tenant-based assistance from the Housing Authority to assist her in paying rent for the residence. Plaintiff–Appellee Ricky Grady was living at the residence with James, and on March 24, 2002, Grady fell through an upstairs floor of the residence and sustained injuries.

In November 2002, Grady filed a complaint against Clark and the Housing Authority. The Housing Authority subsequently filed a motion for summary judgment. Following a hearing, the trial court denied the motion. The Housing Authority then filed this interlocutory appeal.

■ Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind.

Trial Rule 56(C). Relying upon specifically designated evidence, the moving party bears the burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Estate of Pflanz v. Davis*, 678 N.E.2d 1148, 1150 (Ind.Ct.App.1997). Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the non-movant. *Kreighbaum v. First Nat. Bank & Trust*, 776 N.E.2d 413, 419 (Ind.Ct.App.2002).

■ On appeal, this Court is bound by the same standard as the trial court, and we consider only those matters which were designated to the trial court. *Pflanz*, 678 N.E.2d at 1151. We liberally construe all designated evidentiary material in the light most favorable to the non-moving party to determine whether there is a genuine issue of material fact. *Id.* The party that lost in the trial court has the burden of persuading the appellate court that the trial court erred. *Id.*

In the present case, the Housing Authority contends that the trial court erred by denying its motion for summary judgment because federal law preempts Grady's state law claim of negligence. We will begin with some background of the federal regulations regarding tenant-based assistance through the Department of Housing and Urban Development ("HUD").

The purpose of the HUD Section 8 Housing Choice Voucher Program is to subsidize the rent payments of low-income families in order that they may afford decent, safe and sanitary housing. 24 C.F.R. § 982.1(a)(1). The program is administered by state or local government entities known as public housing agencies

1. Defendant Robert Clark, the owner of the residence in which Grady fell, is not a party to this appeal.

("PHA"), to whom HUD provides funds. 24 C.F.R. § 982.1(a)(1). Families in the program select and rent units that must meet program housing quality standards ("HQS"). 24 C.F.R. § 982.1(a)(2). 24 C.F.R. § 982.401 sets forth the HQS for housing assisted through the Housing Choice Voucher Program. This regulation states the performance and acceptability criteria for key aspects of the housing quality, such as sanitary facilities, illumination and electricity, and structure and materials. *See* 24 C.F.R. § 982.401. If the housing unit meets these HQS and the PHA approves the rental, the PHA then contracts with the owner of the rental unit in order for the PHA to make rent subsidy payments to the owner on behalf of the family. *See* 24 C.F.R. § 982.1(a)(2) and (b)(2).

The preemption doctrine is rooted in the Supremacy Clause of Article VI of the United States Constitution, which establishes federal law as the supreme law of the land. U.S. Const. Art. VI, cl. 2; *Bell v. Lollar*, 791 N.E.2d 849, 852 (Ind.Ct.App.2003), *reh'g denied.* Nevertheless, courts do not lightly attribute to Congress or to a federal agency the intent to preempt state or local laws. *Rogers ex rel. Rogers v. Cosco, Inc.*, 737 N.E.2d 1158, 1164 (Ind.Ct.App.2000), *reh'g denied, trans. denied,* 761 N.E.2d 419 (2001). Thus, the crucial question in any preemption analysis is whether Congress intended that federal regulation supersede state law. *Community Action Program of Evansville v. Veeck,* 756 N.E.2d 1079, 1084

(Ind.Ct.App.2001). The intent of Congress may be express, that is expressly stated in the statute, or implied, that is implicitly stated in the statute's structure and purpose. *Bell,* 791 N.E.2d at 853. An understanding of the scope of a preemption statute relies on an understanding of congressional purpose, as discerned from the language of the preemption statute and· the statutory framework surrounding it. *Rogers,* 737 N.E.2d at 1163. "Also relevant to the analysis is the 'structure and purpose of the statute as a whole, as revealed not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law.'" *Id.* (*quoting Medtronic, Inc. v. Lohr,* 518 U.S. 470, 116 S.Ct. 2240, 2251, 135 L.Ed.2d 700 (1996)). In addition, administrative regulations promulgated pursuant to congressional authorization have the same preemptive effect as federal statutes. *Id.* at 1163–64. We now address whether federal regulations either expressly or implicitly preempt Grady's state law claim of negligence.

As we have stated, express preemption occurs when a statute expressly defines the scope of its preemptive effect. *Bondex International v. Ott,* 774 N.E.2d 82, 85 (Ind.Ct.App.2002). We first observe that there is no express preemption provision in the federal regulations regarding HUD, the PHA, and the Section 8 tenant-based assistance programs.[2]

---

2. An example of an express preemption clause can be found in *Rogers,* 737 N.E.2d 1158. There, a panel of this Court dealt with an express preemption clause contained in the Federal National Traffic and Motor Vehicle Safety Act. That clause explicitly set forth its preemptive scope, as follows:

> When a motor vehicle safety standard is in effect under this chapter, *a State or a politi-*

*cal subdivision of the State may prescribe or continue in effect* a standard applicable to the same aspect of performance of a motor vehicle or motor vehicle equipment only if the standard is identical to the standard prescribed under this chapter.

49 U.S.C. § 30103(b)(1) (emphasis added).

■ Therefore, we must determine whether this case involves implied preemption. Implied preemption results when state law conflicts with federal law. *Rogers*, 737 N.E.2d at 1164. It occurs either where it is impossible to comply with both federal and state or local law, or where state law stands as an obstacle to the accomplishment and execution of federal purposes and objectives. *Id.* In the present case, we are asked to decide whether the federal regulation 24 C.F.R. § 982.406 preempts the state statute Ind.Code § 36-7-18-15. 24 C.F.R. § 982.406 provides:

> Part 982 does not create any right of the family, or any party other than HUD or the PHA, to require enforcement of the HQS requirements by HUD or the PHA, or to assert any claim against HUD or the PHA, for damages, injunction or other relief, for alleged failure to enforce the HQS.

In contrast, Ind.Code § 36-7-18-15(1) provides that a housing authority may sue and be sued.

The Housing Authority argues that 24 C.F.R. § 982.406 preempts state law and bars all claims for damages based on the enforcement or non-enforcement of the HQS. It states that Grady's claim, although creatively labeled so as to avoid the preemptive effect of § 982.406, is in fact a claim based on a failure to enforce the HQS. Specifically, Grady's complaint alleges a failure of the Housing Authority to inspect the residence and to discover the structural defect that led to his injury.

Grady, as one might imagine, contends that § 982.406 does not preempt his state law claim against the Housing Authority because, he alleges, his claim is not based on the failure of the Housing Authority to enforce the HQS. Rather, he states that his claim is based on the Housing Authority's breach of an assumed duty regarding moving procedures for Section 8 tenants and breach of its duty to warn of Section 8 housing defects.

■ Although Ind.Code § 36-7-18-15 allows the PHA to sue and be sued, when the enforcement of the HQS is involved, as in this case, state law is preempted by the federal regulation. Congress obviously carved out this specific area to be governed by the federal regulation rather than state or local law. This is evidenced by the fact that 24 C.F.R. § 982.406 was enacted without comment and by the clear, unambiguous language used to draft the regulation. *See* Dept. of Housing and Urban Development, 60 Fed.Reg. 34,660, 34,-680 (1995). Thus, the history of the enactment of § 982.406, as well as the text of the regulation, evince the clear intent of Congress to preempt state and local law with regard to the enforcement of the HQS.

Therefore, having determined that state law in this area is preempted, we turn now to the basis of Grady's claims. If Grady's claims against the Housing Authority are rooted in the enforcement of the HQS, then they are preempted by § 982.406. Otherwise, Grady's claims may proceed under state law. Upon review of the materials designated to the court in support of the parties' motions for summary judgment, we find that Grady's claims consist of the Housing Authority's alleged (1) improper inspection of the residence, (2) failure to identify structural issues and insure their correction, (3) failure to enforce its own policies regarding Section 8 housing, and (4) failure to warn of structural defects.

■ Grady's first claim is that the Housing Authority improperly inspected the residence. § 982.405 requires the PHA to inspect the Section 8 housing unit "to determine if the unit meets the HQS." *See* 24 C.F.R. § 982.405(a). This section, then,

works in conjunction with § 982.401 which sets forth the HQS for Section 8 residences because it is these HQS that must be met upon inspection of the residence. Secondly, Grady claims that the Housing Authority failed to identify structural issues and insure their correction. Again, § 982.405 requires the PHA to inspect the residences involved in the Section 8 housing program to insure their compliance with the HQS as listed in § 982.401. Specifically, sub-section (g) of § 982.401 discusses the requirements for the structure of the residence, including flooring defects. Further, § 982.405(d) requires the PHA to notify the owner of defects shown by the inspection, and § 982.404 compels the *owner* of the residence to maintain the unit in accordance with the HQS.

For his third claim, Grady avers generally that the Housing Authority failed to enforce its own policies regarding the upkeep of Section 8 housing. Although this is a general assertion, it directly relates to § 982.401 where the HQS are listed. As indicated before, the HQS is a list and description of the level of maintenance for specific items in a Section 8 housing unit. These standards must be met in order for a residence to qualify for the Section 8 tenant-assisted program, and the standards must be maintained as long as the residence is involved in the program. Finally, Grady claims that the Housing Authority failed to warn of structural defects in the residence. This contention calls into play sections previously mentioned, namely § 982.401 which lists the HQS that are the base level of quality standard with which any Section 8 housing unit is to comply, and § 982.405(d) which requires the PHA to notify the owner of defects shown by the inspection.

Our review of Grady's claims discloses that each claim is based on some section of Part 982, the federal regulations dealing with Section 8 tenant-based housing assistance. As we recall, § 982.406 begins by stating that Part 982 does not create any right of the family or any party to require enforcement of the HQS. It also declares that Part 982 does not create any right of the family or any party to assert any claim for the alleged failure to enforce the HQS. As revealed above, all of Grady's claims relate to his attempt to enforce the HQS of the Section 8 housing assistance program. Therefore, all of Grady's claims are preempted by federal law pursuant to § 982.406.

Next, the Housing Authority asserts that it does not owe a duty to Grady based upon the common law. Whether a duty exists is generally a question of law for the court to determine. *Guy's Concrete, Inc. v. Crawford,* 793 N.E.2d 288, 293 (Ind.Ct.App.2003), *trans. denied,* 804 N.E.2d 760. Our supreme court has articulated three factors that are to be balanced in order to determine whether a duty exists: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns. *Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind. 1991), *reh'g denied.*

We begin by looking at the relationship between the Housing Authority and Grady. The Housing Authority was not the owner or landlord of the residence in which Grady was injured. Rather, the Housing Authority made partial rent payments to Clark for the rental of the residence in which Grady was injured. These payments were based upon a Section 8 housing assistance payment contract between the Housing Authority and Clark. Moreover, we note that the lease for the residence was between James and Clark. Grady was neither a party to the housing assistance payment contract nor the residential lease and was not included in the

list of residents contained in the housing assistance payment contract.

We now turn to the reasonable foreseeability of harm to the person injured. This component of the duty analysis has proven to be a sticking point in a number of cases. One reason for this is the confusion between the foreseeability element of the duty analysis and the foreseeability element of proximate cause. In *Goldsberry v. Grubbs*, we explained the distinction between the foreseeability component of the duty analysis and the foreseeability component of proximate cause, as follows:

> By logical deduction, the foreseeability component of the duty analysis must be something different than the foreseeability component of proximate cause. More precisely, it must be a lesser inquiry; if it was the same or a higher inquiry it would eviscerate the proximate cause element of negligence altogether. If one were required to meet the same or a higher burden of proving foreseeability with respect to duty, then it would be unnecessary to prove foreseeability a second time with respect to proximate cause. Additionally, proximate cause is normally a factual question for the jury, while duty is usually a legal question for the court. As a result, the foreseeability component of proximate cause requires an evaluation of the facts of the actual occurrence, while the foreseeability component of duty requires a more general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence. As recently recognized by our supreme court, "[t]o a great extent, duties are defined by the foreseeability of relevant harms."

*Goldsberry*, 672 N.E.2d 475, 479 (Ind.Ct. App.1996), *trans. denied*, 726 N.E.2d 306 (1999) (internal citations omitted). Grady's argument that his injury was foreseeable is misplaced because it is not based upon the broad, general analysis of the foreseeability component of duty but instead is based upon the specific hindsight analysis of the foreseeability component of proximate cause. While we agree that it may be foreseeable that residents of Section 8 housing might incur injuries in their residences, we do not agree that it is likewise foreseeable to a legally significant extent that entry into a contract providing for Section 8 housing payments made to the landowner would result in injury to the resident. Therefore, we believe it is illogical to say that there is a high degree of foreseeability that entry into a contract by the Housing Authority with a landowner for Section 8 housing assistance payments would result in an injury. *See e.g., Williams v. Cingular Wireless*, 809 N.E.2d 473 (Ind.Ct.App.2004), *trans. pending* (declining to impose liability on seller of cellular phones where plaintiff bought cellular phone, used it while driving and was involved in an accident).

The final factor in determining whether a duty exists is public policy concerns. "Duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." *Webb*, 575 N.E.2d at 997. The stated purpose of the Section 8 housing program is that "HUD pays rental subsidies so eligible families can afford decent, safe and sanitary housing." 24 C.F.R. § 982.1(a)(1). To place a duty on the Housing Authority to ensure the safety of each and every residence of Section 8 housing would clearly frustrate the objectives of the housing assistance program. Every day people are injured in their residences, and the likelihood of injury in this instance is not necessarily any greater than what occurs every day to every person in non-Section 8 residences. With regard to leased residences in particular,

even the landlord is not held responsible for injuries to tenants. "Generally, the common law does not impose a duty upon a landlord to protect tenants from injuries due to defective conditions on the property once possession and control of the property has been surrendered." *Zubrenic v. Dunes Valley Mobile Home Park, Inc.*, 797 N.E.2d 802, 806 (Ind.Ct.App.2003), *trans. denied*, 812 N.E.2d 796 (2004).[3] Here, the Housing Authority is not the landlord; Clark is the landlord. The Housing Authority is a remote actor dealing only with the landlord of the residence. The Housing Authority contracted with Clark to pay to Clark, not the tenants, housing assistance payments. The contract, as well as the HUD regulations, require the landlord (i.e., Clark), not the Housing Authority, to maintain the leased premises. *See* Housing Assistance Payments Contract, Part B, Paragraph 3 in Appellant's Appendix at 91; 24 C.F.R. § 982.404(a)(1). Moreover, there are repercussions for the landlord's failure to maintain the residence in accordance with the HQS, including loss of the housing assistance contract. *See* 24 C.F.R. § 982.404(a). Ultimately, sound public policy dictates that the responsibility for negligent maintenance of the leased premises should fall upon the landlord.

Upon balancing the three factors articulated in *Webb,* we conclude that Grady's non-existent relationship with the Housing Authority, the aforementioned public policy considerations, and any foreseeability of the harm at issue here weigh against imposing a duty. Thus, we must conclude that the Housing Authority did not owe a duty of care to Grady.

■ Finally, the Housing Authority argues that it did not assume a duty of care with regard to Grady. Specifically, in his complaint Grady claims that the Housing Authority voluntarily assumed a duty to Grady when James spoke with a clerk at the Housing authority. In addition, Grady claims that the Housing Authority assumed a duty to him when it sent James a copy of the inspection report following the inspection of the residence.

■ The courts of this state have recognized that a duty to exercise care and skill may be imposed upon one who, by affirmative conduct, assumes to act, even gratuitously, for another. *Merchants National Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 388 (Ind.Ct.App.2000). "[T]he actor must specifically undertake to perform the task he is charged with having performed negligently, for without actual assumption of the undertaking there can be no correlative legal duty to perform the undertaking carefully." *Id.* In other words, the assumption of a duty creates a special relationship between the parties and a corresponding duty to act in a reasonably prudent manner. *Id.* The existence and extent of such duty are ordinarily questions for the trier of fact; however, when there exists no genuine issue of material fact, assumption of a duty may be determined as a matter of law. *Vandenbosch v. Daily,* 785 N.E.2d 666, 669 (Ind.Ct. App.2003), *trans. denied,* 804 N.E.2d 747.

There is no evidence in the designated materials that the Housing Authority, through its clerk, gratuitously undertook a

---

**3.** Although not alleged here, one situation that creates an exception to the general rule is that a tenant may recover for injuries stemming from defective premises if the landlord expressly agrees to repair the defect and is negligent in doing so. Historically, a second exception has been that the landlord may be held liable for injuries caused by latent defects of which the landlord was aware but which were unknown to the tenant and were not disclosed by the landlord. *Zubrenic,* 797 N.E.2d at 806.

duty to protect Grady from falling through the ceiling or otherwise injuring himself in the residence simply by taking a phone call from James. Grady points to James' affidavit as evidence to support his allegation of assumed duty. However, the evidence is insufficient to establish, as a matter of law, that the Housing Authority, via these phone conversations, undertook the task of protecting Grady, thus creating a special relationship that would require the imposition of a special assumed duty of care.[4] To impute a duty to the Housing Authority under these circumstances would essentially require the Housing Authority to be the guarantors of each Section 8 resident's safety merely by speaking to them on the phone; this we will not do. We find no assumed duty.

■ Next, we turn to Grady's contention that the Housing Authority assumed a duty to him when it sent James a copy of the inspection report following the inspection of the residence. Any action taken by the Housing Authority was done in furtherance of its obligations under the HUD regulations with regard to the Section 8 tenant-based assistance program. Specifically, 24 C.F.R. § 982.405(d) requires the Housing Authority to notify the owner (in this instance, Clark) of defects shown by an inspection. Moreover, 24 C.F.R. § 982.404(a)(1) states that the owner of the property (Clark) is responsible for maintaining the residence in accordance with the HQS. The Housing Authority sent a letter to James with a copy of the inspection report. This notification merely apprises the tenant of the result of the inspection of the residence. The act of notifying the tenant is insufficient to create a special relationship whereby the Housing Authority assumed a duty to protect Gra-

dy from any deficiencies in the residence. The letter by the Housing Authority was merely a notification in the ordinary course of the administration of its Section 8 contracts with the owners of the residences, not an assumption of a duty to protect and ensure the safety of the inhabitants of the residences. Again, imposing an assumed duty of care upon the Housing Authority in this instance would essentially make the Housing Authority the guarantor of the safety of all Section 8 tenants when they are notified of the results of an inspection of their residence. Therefore, we find no assumed duty.

Based upon the foregoing discussion and authorities, we conclude that the trial court erred by denying the Housing Authority's motion for summary judgment because federal law preempts state law with regard to this negligence action, and the Housing Authority neither owed a common law duty to Grady, nor assumed any duty of care with regard to Grady. Therefore, the trial court is ordered to enter summary judgment in favor of the Housing Authority.

Reversed and remanded with instructions.

NAJAM, J., and BAILEY, J., concur.

---

4. We note that it is undisputed that these phone conversations took place on March 13 and 14, 2002, one and two days *prior* to the failed inspection of the residence on March 15, 2002.