# FOR PUBLICATION



**FILED**

Oct 31 2014, 9:48 am

CLERK
of the supreme court,
court of appeals and
tax court

<u>ATTORNEY FOR APPELLANTS</u>:

**JEFFREY O. MEUNIER**
Carmel, Indiana

<u>ATTORNEYS FOR APPELLEES</u>:

**CYNTHIA M. LOCKE**
**TARA STAPLETON LUTES**
Cantrell Strenski & Mehringer, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

ERIC COX and PEA COCKS CORP. )
d/b/a COX'S PUB, )
 )
 Appellants-Plaintiffs, )
 )
  vs. )  No. 79A05-1402-CT-75
 )
MAYERSTEIN-BURNELL CO., INC. )
d/b/a MBAH INSURANCE and JEFF CLUTE, )
 )
 Appellees-Defendants. )

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Randy J. Williams, Judge
Cause No. 79D01-1206-CT-41

**October 31, 2014**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Eric Cox and Pea Cocks Corp. d/b/a Cox's Pub ("Cox's Pub" or "the Pub") appeal the trial court's grant of summary judgment in favor of Jeff Clute and Mayerstein-Burnell Co., Inc. d/b/a MBAH Insurance ("MBAH"). Cox and the Pub present two issues for our review, which we revise and restate as the following three issues:

1. Whether Cox has standing, in his individual capacity, to pursue his negligence claims in this appeal.[1]

2. Whether Clute, as MBAH's agent, had a special relationship with Cox and Cox's Pub such that he had a duty to advise regarding the adequacy of the Pub's insurance coverage.

3. Whether, despite not having a duty to advise in the first instance, Clute nevertheless assumed that duty.

We hold that Cox had standing to pursue his negligence claims, but we apply our supreme court's recent opinion in Hughley v. State, 15 N.E.3d 1000 (Ind. 2014), and affirm the trial court's grant of summary judgment in favor of Clute and MBAH.

## FACTS AND PROCEDURAL HISTORY

Cox became the president of Cox's Pub in May 2003 when his father, who had purchased the Pub in 1996, died. Julie Burton, a longtime employee of the Pub, managed the routine operations of the business. Among other things, Burton was responsible for the procurement and maintenance of business insurance, an obligation that afforded her the attendant authority to make necessary representations on behalf of the Pub.

Until May 2010, Cox's Pub maintained a business insurance policy through Society Insurance ("Society") that had policy limits of $383,000 for losses to the Pub's

---

[1] Cox and the Pub do not challenge the trial court's entry of summary judgment on their breach of contract claims.

building. During this period, in August 2008, Clute, an insurance producer for MBAH, solicited Cox's Pub with an offer to quote a business insurance policy and was referred to Burton. After a scheduled meeting, Burton informed Clute that Cox's Pub would stay with Society. The two had no further contact at that time.

Between August 2008 and May 2010, Cox's Pub settled a wrongful death lawsuit, which resulted in higher premiums[2] under the Society policy. Cox's Pub could not afford these premiums, and, in May 2010, Burton let the Society policy lapse for failure to pay premiums. Later, in August 2010, Burton contacted Clute, told him about the Society policy's premiums, and informed him that Cox's Pub was currently uninsured. She stated that the Pub needed insurance but, due to financial difficulties, desired to keep its premiums as low as possible. The two scheduled an in-person meeting at Cox's Pub. Burton also informed Cox that, as a result of the settlement, Cox's Pub could no longer afford Society's increased premiums but that Clute could keep the Pub's premiums approximately the same as what the Pub had paid prior to the settlement.

During their meeting, Burton provided Clute with a copy of the Society policy's declarations page and requested the same coverage under a new policy. Burton also provided Clute with other information necessary for Clute to obtain a quote. Clute later summarized this information, which

> included such information as the nature of the business, owner of building, and number of prior claims. Ms. Burton also provided information regarding the square footage and age and construction type of the building, any improvements, and whether [the] building has a sprinkler system, an alarm system, fire extinguishers, and deep fryers. Ms. Burton provided

---

[2] The record contains several allegations by Cox of wrongdoing by Burton, and one such allegation is that Burton lied to both Cox and Clute about the premium increase. It is therefore not clear whether Society actually sought to increase Cox's Pub's premiums.

3

information regarding Cox's Pub's procedures for dealing with intoxicated persons, fight prevention, and age identification. Finally, Ms. Burton provided information regarding the amount of coverage limits Cox's Pub needed for the building and business personal property.

Appellant's App. at 64-65.

Clute submitted this information, via the Acord application, to Illinois Casualty Company, which used it to prepare a commercial building valuation report ("Valuation"). The Valuation estimated a replacement cost value for the Pub building at $265,049. Nonetheless, following Burton's instructions to provide a quote in line with the Society policy, Clute presented Burton with a quote from Illinois Casualty with building coverage limits of $354,000 and a yearly premium of $4,032.[3] The following day, after a conversation with Burton, Clute presented Burton with a second quote, also from Illinois Casualty, based on the Valuation. It had building coverage limits of $265,000 and a yearly premium of $3,880. Throughout the process, Burton made clear to Clute that Cox's Pub was struggling financially, needed to save money, and wanted to keep the Pub's premiums as low as possible.

The final decision regarding the Pub's coverage belonged to Burton, and Clute did not personally offer an opinion about the value of the Pub building. Clute did, however, tell Burton that Illinois Casualty believed that it could adequately insure the Pub building for $265,000. Nevertheless, Clute did not advise Burton about which policy Cox's Pub should take, and, when presented with both quotes, Burton ultimately purchased the policy with the $265,000 limits. Less than one month later, on September 8, a fire destroyed Cox's Pub.

---

[3] Clute stated in his affidavit that Burton told him the Society policy had coverage limits of $354,000.

Cox's Pub submitted a claim to Illinois Casualty, and, subsequently, Cox, individually, and the Pub jointly filed a complaint against Clute and MBAH. The complaint included negligence and breach of contract claims, which were based on Cox and the Pub's allegations that the insurance proceeds were insufficient to cover the replacement cost of the building. Cox and the Pub alleged that the true replacement cost exceeded $500,000, which left them unable to rebuild and continue the business. Clute and MBAH moved for summary judgment, which the trial court granted following a hearing. This appeal ensued.

## DISCUSSION AND DECISION

Cox's Pub contends that the trial court erred when it entered summary judgment for MBAH and Clute. Our standard of review for summary judgment appeals is well established.

> We review summary judgment de novo, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Williams v. Tharp, 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." Id. (internal citations omitted).
>
> The initial burden is on the summary-judgment movant to "demonstrate[] the absence of any genuine issue of fact as to a determinative issue," at which point the burden shifts to the non-movant to "come forward with contrary evidence" showing an issue for the trier of fact. Id. at 761-62 (internal quotation marks and substitution omitted). And "[a]lthough the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court." McSwane v. Bloomington Hosp. &

5

Healthcare Sys., 916 N.E.2d 906, 909-10 (Ind. 2009) (internal quotation marks omitted).

Hughley, 15 N.E.3d at 1003 (alterations original to Hughley).

As our supreme court recently reaffirmed, summary judgment is a "high bar" for the moving party to clear in Indiana. Id. at 1004. Unlike federal practice, which "permits the moving party to merely show that the party carrying the burden of proof [at trial] lacks evidence on a necessary element, we impose a more onerous burden: to affirmatively 'negate an opponent's claim.'" Id. at 1003 (quoting Jarboe v. Landmark Cmty. Newspapers of Ind., Inc., 644 N.E.2d 118, 123 (Ind. 1994)). Further:

> Summary judgment is a desirable tool to allow the trial court to dispose of cases where only legal issues exist. But it is also a "blunt . . . instrument" by which the non-prevailing party is prevented from having his day in court. We have therefore cautioned that summary judgment is not a summary trial and the Court of Appeals has often rightly observed that it is not appropriate merely because the non-movant appears unlikely to prevail at trial. In essence, Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims.

Id. (citations and some quotations omitted; omission original to Hughley).

Thus, for the trial court to properly grant summary judgment, the movants must have made a prima facie showing that their designated evidence negated an element of the nonmovants' claims, and, in response, the nonmovants must have failed to designate evidence to establish a genuine issue of material fact. See Dreaded, Inc. v. St. Paul Guardian Ins. Co., 904 N.E.2d 1267, 1270 (Ind. 2009). With these principles in mind, we turn now to Clute and MBAH's motion regarding Cox and the Pub's claims.

## Issue One:  Cox's Individual Standing

In their motion for summary judgment, Clute and MBAH first argued that Cox lacked individual standing on his negligence claims.  More specifically, Clute and MBAH stated, "it is not clear that Plaintiffs' Complaint is alleging that Defendants owed Eric Cox, the individual, a duty separate from the one owed to Plaintiff [Cox's Pub] to insure the subject business establishment and/or breached a duty of care to Eric Cox, the individual." Appellant's App. at 30.  However, Clute and MBAH designated no evidence on summary judgment in support of their contentions.  While the designation of a competent, self-serving affidavit will suffice to make a prima facie showing, "[m]erely resting on the pleadings," as Clute and MBAH do, is not enough.[4]  Hughley, 15 N.E.3d at 1002.  Mere suppositions, such as unsupported statements in pleadings, cannot support summary judgment, but a scintilla of evidence, such as a self-serving affidavit, is enough.  See id. ("Merely resting on the pleadings will not permit the non-movant to raise [a genuine issue of material fact], but a competent affidavit will.  Here, Defendant's affidavit was self-serving and none too detailed—but it was competent, and it contradicted the State's designated evidence on a material fact."); Smith v. Taulman, ___ N.E.3d ___, No. 32A01-1402-PL-78 (Ind. Ct. App. Oct. 31, 2014).  Therefore, as the summary judgment movants, Clute and MBAH have not met their burden to negate an element of the nonmovants' allegations, and we hold that Cox has standing to pursue his negligence claim in this appeal.

---

[4] We do note, however, that Cox and the Pub could then defeat Clute and MBAH's prima facie showing by designating their own competent, self-serving affidavit.  "Summary judgment should not be granted when it is necessary to weigh the evidence." Hughley, 15 N.E.3d at 1005.

## Issue Two:  Whether a Special Relationship Existed

Cox and Cox's Pub contend that, by obtaining the Valuation, Clute counseled the Pub regarding specialized insurance coverage and, thereby, held a special relationship with the Pub.  This special relationship, they reason, imposed upon Clute a concomitant duty to advise the Pub regarding the adequacy of its coverage.  We hold, however, that the undisputed designated evidence shows that Clute did not have a special relationship with Cox's Pub and, therefore, did not have a duty to advise the Pub regarding the adequacy of its coverage.

We have previously held that:

[a]n insurance agent who undertakes to procure insurance for another is an agent of the insured and owes the insured a general duty to exercise reasonable care, skill[,] and good faith diligence in obtaining insurance.  However, the agent's duty may extend to the provision of advice only upon a showing of an intimate long[-]term relationship between the parties or some other special circumstance. . . .

[S]omething more than the standard insured-insurer relationship is required to create a special relationship obligating the insurer to advise the insured about coverage. . . .  [I]t is the nature of the relationship, not its length, that invokes the duty to advise.  Some of the relevant factors which manifest a special relationship include:  (1) exercising broad discretion to service the insured's needs; (2) counseling the insured concerning specialized insurance coverage; (3) holding oneself out as a highly-skilled expert, coupled with the insured's reliance upon the expertise; and (4) receiving compensation, above the customary premium paid, for the expert advice provided.

* * *

This existence of a duty is a question of law for this court which depends, in part, on the relationship of the parties.  Whether an insurance agent owes the insured a duty to advise is likewise a question of law for the court.  However, whether the parties' relationship gives rise to such a duty may involve factual questions.

8

Am. Family Mut. Ins. Co. v. Dye, 634 N.E.2d 844, 847-48 (Ind. Ct. App. 1994) (citations and quotations omitted; emphases added), trans. denied.

Clute and MBAH's designated evidence shows that Clute and Cox's Pub began their insurer-insured relationship approximately one month before the fire but "had never done business . . . prior to the disputed transaction." United Farm Bureau Mut. Ins. Co. v. Cook, 463 N.E.2d 522, 528 (Ind. Ct. App. 1984). Thus, Clute and MBAH demonstrated that no longstanding, intimate relationship existed between the parties, and Cox and the Pub did not designate evidence in response that raises a genuine issue of material fact on this point. Id.

Therefore, to negate whether Clute had a duty to advise, Clute and MBAH were required to designate evidence to show that no "other special circumstance" existed that placed Clute in a special relationship with the Pub. Dye, 634 N.E.2d at 847. In this regard, Clute and MBAH designated evidence relevant to each of the four Dye factors. But, both in their trial court response and in their argument to this court on appeal, Cox and the Pub challenge only whether Clute and MBAH have met their burden under the second Dye factor—counseling—and we limit our review accordingly.[5] See Ind. Appellate Rule 46(A)(8)(a).

---

[5] The description in Dye of a "special relationship" delineates four "relevant factors," which the court qualified as just "[s]ome" of the factors that may be relevant. 634 N.E.2d at 848. Cox and the Pub cite no authority on appeal in which an Indiana court has found a duty to advise based on just one of the four factors delineated in Dye. Nonetheless, for the sake of argument, we assume that such a finding is possible.

We also note that, although Cox and the Pub present an argument under the third factor in their Reply Brief, we will not consider that argument. It is well settled that one cannot make an argument for the first time on appeal, much less in one's Reply Brief. Ind. Appellate Rule 46(C); Showalter v. Town of Thorntown, 902 N.E.2d 338, 342 (Ind. Ct. App. 2009), trans. denied.

In this regard, the designated evidence is unambiguous and affirmatively negates the claim that Clute counseled Cox's Pub. It shows that Clute and MBAH obtained from Illinois Casualty two different quotes for standard business policies, one with limits of $354,000 and one with limits of $265,000. The policy with the $265,000 limits was based on the Valuation. Clute provided Burton with Illinois Casualty's quotes and did not personally give an opinion regarding either the value of the Pub's structure or which policy Cox and the Pub should purchase. Burton ultimately selected the policy with the $265,000 limits and the lower premium.

Although Cox and the Pub cite Clute's deposition for the proposition that Clute told Burton she could save money by purchasing the policy with the $265,000 limits, this contention is wholly unsupported by the record. Indeed, Clute testified in his affidavit and at his deposition that he merely provided the two policies to Burton, and she chose the one the Pub wished to purchase. Nothing in the record contradicts this. To be sure, when counsel at Burton's deposition asked her if Clute had made recommendations to her about adequate policy limits or building coverage that the Pub should purchase, Burton testified, "I don't remember." Appellant's App. at 149-50. This, however, does not contradict Clute's assertions and, therefore, Clute and MBAH's designated evidence.

Nevertheless, the parties disagree on whether these undisputed facts show that Clute counseled the Pub regarding specialized coverage. Thus, the parties actually quarrel over the legal meaning of "counseling" and whether the undisputed facts fit that meaning. This disagreement raises a question of law for this court.

Dye and Cook describe what it means to "counsel" an insured. Counseling occurs when an insurance agent undertakes to "provide a specific analysis of [one's] insurance needs." Dye, 634 N.E.2d at 848. Cook makes clear that such an analysis arises in very limited situations. There, we held that an agent counseled the insured where the agent, over a twelve-year period, gave specific advice regarding insurance coverage for precise risks attendant to the management and improvement of a horse farm.[6] See 463 N.E.2d at 524-25, 528.

The designated evidence shows that the Pub's relationship with Clute is not analogous to Cook. Instead, the Pub's relationship with Clute more closely resembles the facts of DeHayes Group v. Pretzels, Inc., 786 N.E.2d 779 (Ind. Ct. App. 2003), trans. denied. In DeHayes, we declined to hold that an agent counseled the insured where the policy at issue provided "standard casualty and property insurance, not a type customized to [the insured's] needs" and where the insured made the final coverage selection from competing quotes. Id. at 783 (quotations omitted).

Here, like in DeHayes, the insurance policy is a standard casualty and property insurance policy, and the designated evidence demonstrates that Clute provided no specific analysis regarding specialized coverage like that present in Cook. Moreover, it is undisputed that, when faced with competing quotes, Cox's Pub, not Clute, made the final

---

[6] We note that Clute and MBAH cite Indiana Restorative Dentistry, P.C. v. Laven Insurance Agency, Inc., 999 N.E.2d 922 (Ind. Ct. App. 2013), trans. granted, in its discussion regarding whether Clute had a duty to advise Cox and the Pub about the adequacy of the Pub's coverage. That case held that an agent counseled the insured where the agent and insured maintained a "long-term, professional affiliation . . . defined by a yearly ritual and customized policies," during which the agent used a detailed questionnaire to "keep abreast of any changes that may [have] affect[ed] the insured's practice." Id. at 931-32 (quotations omitted). Those facts are apposite here, but our supreme court has granted transfer in Indiana Restorative Dentistry, which vacated this court's opinion. App. R. 58(A).

11

determination about what coverage it needed. It was "in the best position to assess [its] need[s] for [coverage] in light of [its] personal assets and ability to pay." Parker ex rel. Parker v. State Farm Mut. Auto. Ins. Co., 630 N.E.2d 567, 570 (Ind. Ct. App. 1994), trans. denied. The Pub's mere expectation of full replacement cost coverage "is not enough to impose a duty on [Clute] to provide advice to an insured regarding the amount of coverage that should be purchased." Myers v. Yoder, 921 N.E.2d 880, 889 (Ind. Ct. App. 2010). Clute and MBAH "delivered services commensurate with the insurance product the [Pub] purchased." Parker, 630 N.E.2d at 570. Although, given the competing policy limits for replacement cost value, it "may have been a good business practice" for Clute to suggest an appraisal of the building, "we will not impose such a duty upon him." Id.

We therefore hold that, as a matter of law, Clute did not counsel the Pub regarding specialized insurance needs. Instead, Clute merely offered two quotes for standard property and casualty insurance, which is not specialized insurance. Cox's Pub then made its own determination of adequate coverage. The trial court did not err when it granted summary judgment to Clute and MBAH on this issue.

### Issue Three: Whether Clute Assumed a Duty to Advise

Finally, Cox and the Pub contend that, even if Clute did not have a special relationship and, therefore, a duty to advise in the first instance, he nevertheless assumed a duty to advise the Pub regarding the adequacy of its coverage by providing the Valuation. Before we address this issue, however, in light of Hughley we must first address the procedural posture in which this argument first arose.

Cox and the Pub's complaint alleged only a general duty of care for its negligence claim and said nothing about assumption of a duty as a theory of liability. Thus, as the summary judgment movants, Clute and MBAH were obligated to make a prima facie showing that negated only Cox and the Pub's general negligence claim. They did so by negating the "duty" element of negligence under the Dye factors. At that point, the burden shifted to Cox and the Pub to raise a genuine issue of material fact in their response motion. In their attempt to do so, in addition to their argument that Clute counseled the Pub, Cox and the Pub also contended, for the first time, that Clute assumed a duty to advise. Thus, although Clute and MBAH had the initial burden to make a prima facie case that negated Cox and the Pub's claims, because Cox and the Pub did not plead assumption of duty, Clute and MBAH's burden on summary judgment did not require them to negate an assumption-of-duty argument. While summary judgment is a high bar, that bar does not require that movants create, and then negate, alternative theories of liability of which they have no notice from the pleadings. Cf. Ind. Trial Rule 12(E) ("If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, he may move for a more definite statement before interposing his responsive pleading."). With this posture in mind, we turn now to the merits of this argument.

Cox and the Pub's sole designation on this issue was the Valuation; however, Clute and Burton's depositions, designated as evidence with respect to other issues, are also instructive, and we consider them here. As we have long recognized, in our review of the trial court's decision on summary judgment, we may consider "any theory or basis

13

supported by the designated materials," however those materials may have been designated to the trial court. FLM, LLC v. Cincinnati Ins. Co., 973 N.E.2d 1167, 1173 (Ind. Ct. App. 2012), trans. denied; see also Wells Fargo Ins., Inc. v. Land, 932 N.E.2d 195, 201 (Ind. Ct. App. 2010) (considering evidence that was not formally designated but was included in material submitted by a party in support of that party's summary judgment motion because the trial court was "apprised of the specific material"). We hold that this designated evidence does not establish a genuine issue of material fact to preclude the entry of summary judgment.

As we explained in Masick v. McColly Realtors, Inc., 858 N.E.2d 682, 692 (Ind. Ct. App. 2006) (emphasis supplied):

> A duty to exercise care and skill may be imposed on one who, by affirmative conduct, assumes to act, even gratuitously, for another. Hous. Auth. of City of South Bend v. Grady, 815 N.E.2d 151, 160 (Ind. Ct. App. 2004). The actor must specifically undertake to perform the task he is charged with having performed negligently, for without actual assumption of the undertaking there can be no correlative legal duty to perform the undertaking carefully. Id. In other words, the assumption of a duty creates a special relationship between the parties and a corresponding duty to act in a reasonably prudent manner. Id. The existence and extent of such duty are ordinarily questions for the trier of fact, but when there is no genuine issue of material fact, assumption of a duty may be determined as a matter of law.

Although Cox and the Pub do not cite to any case law regarding the assumption of a duty in the insurance context, an insurance agent may, in certain circumstances, assume a duty to advise regarding the adequacy of coverage. In Filip v. Block, 879 N.E.2d 1076, 1086 (Ind. 2008), for example, our supreme court stated that an issue of material fact existed regarding whether an insurance agent had assumed a duty after the agent had represented to the insureds that a business policy would cover their nonbusiness personal

14

property when, in fact, it did not. Similarly, in Anderson Mattress Co. v. First State Insurance Co., 617 N.E.2d 932, 934 (Ind. Ct. App. 1993), trans. denied, the insurance agent repeatedly promised the insured that the agent had obtained a blanket coverage policy when, in fact, he had obtained a specific coverage policy. We held that a genuine issue of material fact existed regarding whether the insurance agent had assumed and breached a duty to inform the insured that the policy obtained differed from that which the agent was retained to procure. Id. at 939.

Here, unlike the agents in Filip and Anderson Mattress, the undisputed designated evidence shows that Clute made no such representations and gave no assurances. First, in Filip and Anderson Mattress, the agents wholly failed to obtain the type of coverage requested or needed but nevertheless promised the insureds that they had obtained that coverage. The agent in Filip told the insureds that their nonbusiness personal property was covered by a policy that was completely inapplicable to that type of property. 879 N.E.2d at 1079. Likewise, in Anderson Mattress, the agent repeatedly promised the insured that the business had blanket coverage when it did not. 617 N.E.2d at 934.

In contrast to those cases, the designated evidence demonstrates that Cox's Pub retained Clute to procure replacement cost coverage, and Clute did, in fact, obtain replacement cost coverage. Thus, again, Clute and MBAH "delivered services commensurate with the insurance product the [Pub] purchased." Parker, 630 N.E.2d at 570. Moreover, the designated evidence shows that Cox's Pub was aware of its policy's coverage limits, as it chose between the two competing quotes from Illinois Casualty, and, once more, the Pub was "in the best position to assess [its] need[s] for [coverage] in

15

light of [its] personal assets and ability to pay." Id. at 570. Despite this, the Pub "did not object or raise any concern regarding the limits of the policies and did not request to increase the amount of coverage." Schweitzer v. Am. Family Mut. Ins. Co., 16 N.E.3d 982, 989 (Ind. Ct. App. 2014).

Second, with respect to the Valuation, the designated evidence shows that Clute was not an "actor" in the same sense that the gratuitous assumption of duty cases contemplate because he did not specifically undertake the task that Cox's Pub now ascribes to him. Clute testified at his deposition that he did not, himself, create the Valuation; Illinois Casualty prepared it. Indeed, it is not disputed that Clute merely submitted the information that Burton had provided to him to Illinois Casualty via the Acord application. That is, Clute acted only as an intermediary between the Pub and Illinois Casualty. The following exchange from Clute's deposition is illustrative:

> A:  . . . I don't care what they had it insured for with the other company. It's what do they want to insure it for. It's really my job to help them and the insurance company agree on a value, not me tell them what they want, I don't care if it was on the old policy or if it's just a number they came up with . . . .
>
> Q:  So you view it as your responsibility, your job, as you said, to help them determine what a replacement cost value of their building is so they can properly insure it?
>
> A:  No. It's their—I am supporting them, but it's their final decision on the building value and the insurance company's, they negotiate—it's a contract between them, so they negotiate together.
>
> Q:  Sure. If you're not trying to help them arrive at a replacement cost value, why do you provide them a copy of the cost estimate?
>
> A:  The cost estimate is done by the company.

Appellant's App. at 174. Further:

A: I told [Burton] that Illinois Casualty felt like the building could be valued at the 265. . . . So I offered her—told her, you know, you have your choice in the quotes, basically. . . .

Q: What do you mean by that?

A: I told her that we could offer her a quote for 354 or we could offer for the 265 or whatever that was—number was, and in a way to save a buck, she chose the cheaper.

Q: Did you tell her that you believed that $265,000 quote would be adequate insurance for her building?

A: I told her Illinois Casualty felt it was adequate.

Q: Okay. And you were an agent of Illinois Casualty; correct?

A: Yes.[7]

Q: Did you have any opinion one way or another yourself as to whether that was a fair value?

A: I'm not an expert in building values or contractor, so, no.

Id. at 175-76.

And the undisputed designated evidence demonstrates that Clute did not recommend either policy over the other. Again, Clute testified that "I told [Burton] that we could offer her a quote for 354 or we could offer for the 265 or whatever that was— number was, and in a way to save a buck, she chose the cheaper." Id. at 175. Clute's affidavit is similar. It states, "I met again with Ms. Burton and provided these two (2)

---

[7] We note here that, to the extent Clute was an agent for Illinois Casualty, he acted on behalf of a disclosed principal, and, therefore, he would not be liable for any purported negligence by Illinois Casualty in its issuance of a policy to Cox's Pub. See Carlson Wagonlit Travel, Inc. v. Moss, 788 N.E.2d 501, 503 (Ind. Ct. App. 2003) ("Generally, in Indiana, where an agent discloses the identity of his principal and does not exceed his authority when contracting on the principal's behalf, the agent is not personally bound by the contract unless the agent agrees to be so bound.") (citations and quotations omitted), trans. denied.

quotes to Ms. Burton for consideration. Ms. Burton advised that she wanted to purchase the policy with the lowest insurance premiums." Id. at 65.

In their response, Cox and the Pub do not refute these designations. They designate Burton's deposition as evidence, but, when asked whether Clute "made any recommendations about what the policy limits or amount of coverage on the building should be," Burton responded, "I don't remember." Id. at 150. In fact, when repeatedly asked about her interactions with Clute, Burton remembered very little and was unable to testify to any details beyond providing Clute with the Society policy and informing him that the Pub needed insurance. This is not sufficient to establish a genuine issue of material fact.

By contending that Clute assumed a duty through Illinois Casualty's preparation of the Valuation, Cox and the Pub are "essentially arguing the duty to advise under the guise of the general duty of care." Filip, 879 N.E.2d at 1085. Indeed, like the argument in Filip, which our supreme court squarely rejected, Cox and the Pub's argument boils down to a request to impose a duty on insurance agents to "identify the insured's desires with regard to insurance and explain to the insureds various coverages available to meet those desires." Id. Moreover, the preparation of a business valuation is a standard part of the insurer-insured relationship. See Myers, 921 N.E.2d at 890. Thus, to hold that an insurer assumes a duty to advise by preparing a valuation would create a duty in nearly every instance, and our supreme court has rejected such an expansive duty. See e.g., id. at 1086. Thus, as a matter of law, an insurance agent does not assume a duty to advise

18

merely through the preparation of a valuation.[8] See Filip, 879 N.E.2d at 1085-86; Anderson, 617 N.E.2d at 939. Something more—such as the representations and assurances present in Filip and Anderson Mattress—is needed to assume a duty in the insurance context.

To accept the argument proffered by Cox and the Pub would place a substantial burden on insurance companies, and "[t]he net effect of placing [this] burden upon the insurer would be to transform insurance companies from a competitive industry into personal financial counselors or guardians of the insured, a result we believe goes well beyond anything required by law or dictated by common sense." Parker, 630 N.E.2d at 570 (quotation marks omitted). As we explained in Myers:

> If the rule w[ere] otherwise and the responsibility of determining and calculating the proper amount of . . . insurance w[ere] shifted to the insurance companies and its agents, it is likely that a raft of litigation would ensue whenever coverage miscalculations occurred. Thus, the cost of . . . insurance coverage would rise and those costs would undoubtedly be passed on to the consumer. In light of these concerns, there is no justification for imposing such a sweeping duty on insurance agents and/or their companies.

921 N.E.2d at 890. "Further, if we accept [Cox and the Pub's] argument, then insureds become free riders, paying lower premiums, perhaps for many years, and then retaining the ability to claim the benefit of higher coverage if a loss is incurred." Filip, 879 N.E2d at 1083-84. However, this would contravene the "public policy that places the risk of loss on he who is best able to avoid that loss"—the insured. Myers, 921 N.E.2d at 889.

---

[8] We again note that the designated evidence demonstrates that Clute did not himself prepare the Valuation. He merely forwarded the information provided by Burton to Illinois Casualty, which then prepared the Valuation.

19

## CONCLUSION

In sum, we conclude that Cox, in his individual capacity, has standing to pursue his negligence claims against Clute and MBAH in this appeal. However, we hold that the trial court properly granted summary judgment in favor of Clute and MBAH and against Cox and the Pub on all claims. As a matter of law, Clute, as MBAH's agent, did not have a special relationship with Cox and the Pub such that a duty to advise arose. Moreover, as a matter of law, Clute did not assume a duty to advise.

Affirmed.

BAILEY, J., and PYLE, J., concur.